## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-DP-00494-SCT

*GERALD JAMES HOLLAND*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/2/93 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES L. DAVIS, III |
| | MACK A. BETHEA |
| | JOHN H. HOLDRIDGE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY (DIRECT APPEAL) |
| DISPOSITION: | CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED - 9/11/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/24/98 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Gerald James Holland was convicted in 1987 in the Circuit Court of Harrison County of the capital murder of Krystal D. King, committed during the underlying crime of rape. Holland was sentenced to death. On appeal, this court affirmed the conviction of capital murder, but vacated the death penalty, and remanded the case for resentencing. *Holland v. State*, 587 So. 2d 848 (Miss. 1991). On April 3, 1993, a resentencing jury for the second time imposed the death penalty. This appeal consolidates Holland's direct appeal of his resentencing and our mandatory review of the death

sentence. Holland assigned the thirty-one alleged errors on appeal. After thorough review, we find no error and accordingly affirm Holland's sentence of death.

## THE FACTS

¶2. The evidence presented at the original trial was sufficiently summarized in our prior opinion. ***Holland I,*** 587 So. 2d at 851. Therefore only limited additional facts are required here. Briefly, the 15-year-old victim was raped, beaten, and stabbed. The cause of death was asphyxiation as a ligature was placed around her neck and clothing was stuffed down her throat. Holland forced a friend, who had not been present during the murder, to accompany him to a remote area for burial of the mutilated body. This court held that the evidence presented was sufficient to convince a rational fact finder of Holland's guilt of capital murder and the underlying crime of rape beyond a reasonable doubt, and affirmed Holland's guilt.

¶3. The first jury, however, prematurely considered the death sentence before the mitigating and aggravating evidence was presented before the instructions of the law were given by the trial court. This Court held that the defendant's Sixth Amendment right to a fair and impartial jury had been violated, vacated the death sentence and remanded for a new sentencing hearing. ***Id.*** at 872. Holland was granted a new sentencing hearing and again received the death penalty, which he is now appealing. He asserts that the trial court impermissibly restricted his mitigation evidence at rehearing. Therefore, the issue presented here concerns the scope of evidence admissible in mitigation after remand for resentencing before a new sentencing jury.

¶4. Holland filed a bevy of motions which were denied by the trial judge with certain exceptions. The trial judge reserved evidentiary rulings on each piece of evidence until presented at the trial. As to aggravating factors, the trial judge submitted by instruction the following aggravators: (1) that the capital offense was committed while the defendant was engaged in the act of commission of the crime of rape, (2) that the capital offense was committed for the purpose of avoiding or preventing a lawful arrest, and (3) that the capital offense was especially heinous, atrocious, or cruel. Additionally, the judge submitted to the jury the determination of whether Holland actually killed Krystal D. King, or attempted to kill her, or intended that the killing take place, or contemplated that lethal force would be employed in accordance with the capital sentencing procedure set forth in Miss. Code Ann. § 99-19-101 (7) (a-d) (1994 rev.); *see **Enmund v. Florida***, 458 U. S. 782, 797 (1982). The resentencing jury imposed the death sentence, finding the existence of all three of the aggravating factors, as well as finding that Holland actually killed Krystal King, intended to kill and contemplated that lethal force would be employed. From his sentence of death, Holland appeals.

## DISCUSSION OF LAW

### I. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION VIII, WHICH SOUGHT A DECLARATION THAT MISSISSIPPI'S CAPITAL PUNISHMENT STATUTE IS UNCONSTITUTIONAL, INTER ALIA, BECAUSE IT AUTHORIZES IMPOSITION OF THE DEATH PENALTY FOR SIMPLE FELONY MURDER BUT NOT PREMEDITATED MURDER?

¶5. Holland argues that Miss. Code Ann. § 99-19-101, Mississippi's capital murder statute, is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution.

The ground assigned in this challenge is that the statute permits the death penalty for certain felony murders without a finding of intent to kill, but does not include premeditated murder. This error has been asserted before this Court in *Gray v. State*, 351 So. 2d 1342, 1344 (Miss. 1977), *cert. denied*, 446 U.S. 988 (1980), *reh'g denied*, 448 U.S. 912 (1980) and *Bell v. Watkins*, 381 So. 2d 118, 124 (Miss. 1980 ), but was denied without analysis. Therefore, this Court addresses the issue of constitutionality.

¶6. Gray's Eighth Amendment claim addressed the imposition of the death penalty. Under *Gregg v. Georgia*, 428 U.S. 153, 187-88 (1976), *reh'g denied*, 429 U.S. 875 (1976), a death sentence must not be excessive in relation to the crime for which it is imposed, and death sentences must be imposed with reasonable consistency. Holland contends that Mississippi's capital murder scheme imposing death on an unpremeditated murder, but not a premeditated murder committed in an atrocious manner, implicates the Eighth Amendment concerning fair trial guarantees.

¶7. Holland's argument overlooks the fact that the our statute restricts, limits and narrows the death penalty to certain classes of cases. One class consists of those cases in which two crimes have been committed, i.e., murder and another specified type felony. Another class concerns a murder for compensation, or "hire." *See* Miss. Code Ann. §97-3-19(2)(a) and (d). Another class of crimes address specified classes of people considered particularly vulnerable, i.e., children, law enforcement personnel and public elected officials, etc. *See* Miss. Code Ann. §97-3-19(a) (e) (g).

¶8. Miss. Code Ann. §99-19-101(7)(a-d) further restricts the imposition of death within the class to those persons the sentencing jury finds (1) actually killed; (2) attempted to kill; (3) intended to kill; or (4) contemplated lethal force be used.

¶9. The constitutional challenge asserted here does not offend the Eighth Amendment of the United States Constitution, and this conclusion has been long ago held by the United States Court of Appeals for the Fifth Circuit in *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982), *reh'g denied*, 685 F.2d 139 (5th Cir.1982), *cert. denied*, 461 U.S. 910, *reh'g denied*, 462 U.S. 1124 (1983).

*¶10. Gray* also addressed the due process or equal protection challenge of the Fourteenth Amendment and upheld Mississippi's legislative classifications of criminal activity thereunder stating:

> The basis of Gray's claim under both equal protection and due process is that there is no rational basis for imposing the death penalty on people who commit murder during the course of a felony but not imposing it on people who commit especially atrocious simple murder. However, Mississippi could have rationally decided that felony murders pose a problem different from atrocious simple murders and could have sought to cure the felony murder problem first. Alternatively, the legislature could have decided that the death penalty would be more effective in deterring felony murders since an experienced felon is more likely to assess the consequences of his acts. Conversely, it could have rationally determined that the death penalty might not effectively deter atrocious simple murders since such people are likely as a group to act on passion or impulse and thus be unmindful of the consequences of their crime. In short, the legislature could have rationally decided that the one class of murders either presented a different problem from the other or that the death penalty would be more effective deterrent [sic] to felony murders than atrocious simple murders.

*Gray*, 677 F.2d at 1104.

¶11. Considering all these factors, this Court holds that Holland's constitutional challenge to Mississippi's capital murder statutory scheme is without merit.

**II. DID THE TRIAL COURT ERR IN RULING THAT HOLLAND COULD NOT DENY, CHALLENGE, CONTEST, REBUT, EXPLAIN, OR DEFEND:**

**A. AGAINST THE CONTENTIONS THAT HOLLAND HAD RAPED THE VICTIM;**

**B. AGAINST THE EVIDENCE ADDUCED BY THE PROSECUTION IN SUPPORT OF THE RAPE AGGRAVATING CIRCUMSTANCE;**

**C. AGAINST THE CONTENTION THAT HOLLAND HAD ACTUALLY KILLED, ATTEMPTED TO KILL, INTENDED TO KILL, AND CONTEMPLATED LETHAL FORCE WOULD BE EMPLOYED AGAINST THE VICTIM (*ENMUND FACTORS)?***

**III. DID THE TRIAL COURT ERR IN RULING THAT:**

**A. HOLLAND COULD NOT ARGUE AND SEEK TO ESTABLISH A BASIS FOR RESIDUAL DOUBT REGARDING HIS GUILT FOR THE OFFENSE;**

**B. A DIRECTED VERDICT ON THE RAPE AGGRAVATING CIRCUMSTANCE SHOULD BE GRANTED;**

**C. THE PROSECUTION COULD INTRODUCE ANY AND ALL EVIDENCE ADMITTED AT THE GUILT-INNOCENCE PHASE OF THE PREVIOUS TRIAL, INCLUDING EVIDENCE TENDING TO SHOW THE CIRCUMSTANCES OF THE OFFENSE AND THAT HOLLAND MURDERED AND/OR RAPED THE VICTIM, BUT THAT HOLLAND COULD NOT INTRODUCE EVIDENCE ADMITTED AT THE GUILT-INNOCENCE PHASE OF THE PREVIOUS TRIAL TENDING TO SHOW THE CIRCUMSTANCES OF THE OFFENSE AND THAT HOLLAND DID NOT MURDER AND/OR RAPE THE VICTIM?**

**IV. IN DENYING HOLLAND'S MOTION TO PLACE THE COURT AND STATE ON NOTICE OF THE DEFENSE CALLING AS A WITNESS, DENNIS CANFIELD, AND PLANNING TO READ HIS PRETRIAL TRANSCRIPT LOCATED AT TR. 2232-64 OF THE FIRST TRIAL, WHICH TOOK PLACE IN NOVEMBER AND DECEMBER OF 1987?**

**V. IN RULING THAT DOCTOR LEROY RIDDICK, A HIGHLY QUALIFIED FORENSIC PATHOLOGIST, COULD NOT, EITHER AT THE HEARING ON HOLLAND'S MOTION TO ENJOIN DOCTOR MCGARRY'S TESTIMONY, OR AT HOLLAND'S CAPITAL RESENTENCING TRIAL, TESTIFY THAT THE FORENSIC EVIDENCE DID NOT SUPPORT A FINDING OF RAPE AND THAT DOCTOR MCGARRY'S TESTIMONY REGARDING THE ALLEGED RAPE WAS NOT CREDIBLE?**

**VI. IN DENYING HOLLAND FUNDS TO RETAIN THE SERVICES OF AN EXPERT IN THE FIELD OF SEROLOGY?**

**VII. IN DENYING HOLLAND'S MOTION IN LIMINE TO PRECLUDE THE PROSECUTION AT HOLLAND'S RE-SENTENCING HEARING FROM INTRODUCING ANY EVIDENCE OR WITNESS TESTIMONY THAT IS NOT RELEVANT TO STATUTORY AGGRAVATING CIRCUMSTANCES?**

**VIII. IN DENYING HOLLAND'S MOTION FOR A CRIMINAL HISTORY OF THE VICTIM?**

¶12. The crucial question presented in issues two through eight is whether Holland is barred from reintroducing evidence to dispute guilt at the sentencing phase, to rebut aggravators offered by the prosecution, to dispute the *Enmund* factors which the prosecution must prove for imposition of the death penalty, or to support an argument on residual doubt.

¶13. In a pre-trial motion, Holland asked the Court to refrain from "directing a verdict in connection with the underlying crime of rape." At this motion hearing, the trial judge ruled that there would not be a directed verdict on the aggravating circumstance of rape. However, the trial judge made it clear that his ruling would not preclude the State in "revisiting" the "totality of the [defendant's] acts" during the commission of the crime to show the killing and the rape "so that a rational sentencing body can make that decision of death or life imprisonment." The trial court's ruling applied to the testimony of witnesses and the introduction of the judgment of guilt of capital murder. But, the trial court held that he would not allow "relitigation" of the guilty verdict, which was res judicata.

¶14. Holland's counsel objected to this procedure, arguing that any State's evidence introduced must address one of the aggravating circumstances. *See **Leatherwood v. State***, 435 So. 2d 645, 655 (Miss. 1983), *cert. denied*, 465 U.S. 1084 (1984). Furthermore, Holland argued that he should be allowed to rebut any evidence of the State, including the rape charge. Holland claims that the rebuttal of the testimony relating to the rape charge would allow him the benefit of any residual doubt that the jury might have concerning the rape. These rulings of the trial judge were in response to motions of the defense, and were not *sua sponte* actions of the trial court.

¶15. At trial, the State presented witnesses who described the murder and rape of Krystal King, including the officers to whom Holland made confessions. Holland cross-examined all of these witnesses. The defense objected to the testimony of the State's witness, Dr. Paul McGarry, a pathologist, on the ground that he would testify to matters outside his area of expertise and engage in speculation, when he described the injuries to Krystal's vagina and rectum. The trial judge overruled the objection, accepting McGarry's testimony as an expert within his field of knowledge. Dr. McGarry testified as to the forceful, jagged cuts around the victim's genital area, as well as other injuries, and to the source of some of those injuries, which he stated as being a human penis. Holland attempted to rebut Dr. McGarry's testimony with the proffered testimony of Dr. Leroy Riddick, a forensic pathologist, who disputed the State's contention about the source of the injuries and the presence of seminal fluid in Krystal, as well as the assertion that the victim experienced a long period of pain and suffering. Dr. Riddick also testified regarding the absence of seminal fluid in the victim's body. Dr. Riddick's testimony was not allowed into evidence by the trial court, although he was allowed to proffer his testimony.

¶16. Here, we are asked to determine whether Holland is entitled to relitigate the question of guilt at the sentencing phase. The State must prove the existence of aggravating factors beyond a reasonable doubt. *See* Miss. Code Ann. §99-19-103 (1994 rev.); *see also* **Holland v. State**, 587 So. 2d 848, 874 (Miss. 1991). In addition, the State must prove one of four factors[1] which show that the defendant generally intended to kill his victim. However, Mississippi law is silent concerning the ability of a defendant to introduce rebuttal evidence on those factors before a resentencing jury, in essence relitigating the guilt phase once more.

¶17. Relying on United States Supreme Court precedent, this Court has held that the capital sentencer may not be prohibited from considering "any aspect of the defendant's character or any circumstance of the offense." **Cole v. State**, 525 So. 2d 365, 371 (Miss. 1987), *cert. denied,* 488 U.S. 934 (1988), *reh'g denied*, 488 U.S. 1023 (1989). However, this Court also stated that the trial court could exclude as irrelevant evidence which does not apply to the defendant or to the circumstances of the crime. **Cole**, 525 So. 2d at 371. Our caselaw holds that in an appeal from a resentencing trial for capital murder, the issue of guilt is res judicata and cannot be relitigated. **Irving v. State**, 441 So. 2d 846, 851-52 (Miss. 1983), *cert. denied*, 470 U.S. 1059 (1985), *reh'g denied*, 471 U.S. 1095 (1985), *abrogated on other grounds by* **Willie v. State**, 585 So. 2d 660 (Miss. 1991); *see also* **Jordan v. State**, 518 So. 2d 1186, 1189 (Miss. 1987), *cert. denied,* 488 U.S. 818 (1988).

¶18. Holland urges this Court to read **Irving** more narrowly. Holland argues that **Irving** merely states that a defendant at a capital sentencing retrial is not entitled to an instruction listing the elements of an aggravating circumstance that was the underlying felony found at his guilt-innocence phase.

¶19. Holland's statement of **Irving** is accurate. However, the **Irving** Court reaches its decision by stating the following:

> In that the conviction by the first jury was not disturbed on appeal, the present sentencing jury was prohibited by the doctrine of res judicata from relitigating the issue of guilty (sic). Rather, the second jury's function was to accept the first jury's finding that Irving was guilty of felony-murder involving robbery and then to determine sentence.

**Irving***,* 441 So. 2d at 849.

¶20. Holland argues that the lower court erred in prohibiting him from using evidence from the guilt phase at the sentencing phase of his trial. The defendant is limited to introducing evidence relevant to his sentence. **Jackson v. State**, 337 So. 2d 1242, 1256 (Miss. 1976), *superseded by statute on unrelated grounds as recognized by* **Gray v. State**, 351 So. 2d 1342, 1349 (Miss. 1977).

¶21. Holland argues that our caselaw requires resentencing proceedings to relitigate the question of guilt, citing **West v. State**, 519 So. 2d 418, 425 (Miss. 1988).[2] Holland's reliance on **West** is misplaced, as this Court reversed the entire conviction in **West**, not merely the sentencing phase alone. **West**, 519 So. 2d at 424-25.[3] *See also,* **Williams v. State**, 684 So. 2d 1179 (Miss. 1996), *cert. denied*, 117 S. Ct. 1317 (1997). The **Williams** court stated, "The only issue was the manner of punishment that Williams should receive. Mississippi case law states that in an appeal from a resentencing trial for capital murder, the issue of guilt is res judicata." **Williams**, 684 So. 2d at 1188, *citing* **Irving**, 441 So. 2d at 851-52.

¶22. Other states' caselaw splits as to whether the defendant is permitted to introduce evidence of innocence at sentencing, whether on collateral estoppel or any other ground. California, among other states, prohibits the introduction of this evidence. *People v. Haskett*, 640 P.2d 776, 792 (Cal. 1982) (stating "he [defendant] had no right to attack 'the legality of the prior adjudication . . . .' We found 'self-evident' the proposition that attempts to relitigate a prior finding of guilt are prohibited."), *cert. denied*, 502 U.S. 822 (1991); *see* *Kuenzel v. State*, 577 So. 2d 474, 477 (Ala. Crim. App. 1990) (approving statutory procedure allowing jury to consider aggravator "proved beyond a reasonable doubt" at sentencing, if used at trial to reach conviction), *cert. denied*, 502 U.S. 886 (1991); *State v. Biegenwald*, 524 A.2d 130, 160 (N.J. 1987) (stating "[r]etrial of issues relevant only to guilt is not permitted."); *Stockton v. Commonwealth*, 402 S.E.2d 196, 207 (Va. 1991) (holding defendant not allowed to present evidence of innocence in penalty phase), *cert. denied*, 502 U.S. 902 (1991).

¶23. On the other hand, other states disapprove of any prohibition of evidence of innocence at sentencing. *Blankenship v. State*, 308 S.E.2d 369, 371 (Ga. 1983), *cert. denied*, 488 U.S. 871 (1988); *State v. Stewart*, 341 S.E.2d 789, 790 (S.C. 1986). The Georgia Supreme Court has stated that such information bearing on innocence at sentencing is particularly valuable when a re-sentencing occurs and a new jury is empaneled which did not hear the evidence in the guilt phase. *Romine v. State*, 350 S.E.2d 446, 453 (Ga. 1986), *cert. denied*, 481 U.S. 1024 (1987), *reh'g denied*, 484 U.S. 1048 (1988).

¶24. Federal caselaw also splits on this subject. The United States Supreme Court generally permits a defendant to introduce any relevant mitigating evidence available. *Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982) (allowing use of troubled childhood as mitigating evidence at sentencing), *cert. denied*, 470 U.S. 1051 (1985); *Roberts v. Louisiana*, 431 U.S. 633, 637 (1977) (requiring certain mitigating evidence to be introduced).

¶25. The Supreme Court has also stated that a defendant must be allowed to rebut or defend against evidence introduced against him generally. *Skipper v. South Carolina,* 476 U.S. 1, 5 n.1 (1986) (permitting defendant to submit rebuttal evidence of behavior in prison to counter State's charges of defendant as bad prisoner). It should be noted that in *Edding, Roberts, Simmons,* and *Skipper*, the evidence submitted was clearly offered as mitigation evidence, whereas Holland boldly proclaims his purpose is to attack the prior finding and adjudication of guilt. Such attempt to cast doubt on Holland's prior finding of guilt, which was affirmed on appeal by this Court, is not at all, in the strictest sense, a mitigating factor.

¶26. In its landmark opinion permitting the death penalty, the Supreme Court gave a list of relevant mitigating factors, but the direct question of innocence or guilt was not among them. *Gregg v. Georgia*, 428 U.S. 153, 193 n.44 (1976).[4] Furthermore, the Supreme Court stated that mandatory presumptions violate the Fourteenth Amendment by relieving the State of the burden of proving the elements of the aggravators. *Sullivan v. Louisiana*, 508 U.S. 275, 280 (1993).

¶27. The Supreme Court has stated, "[T]his Court has never held that a capital defendant has a constitutional right to an instruction telling the jury to revisit the question of his identity as the murderer as a basis for mitigation." *Franklin v. Lynaugh*, 487 U.S. 164, 172-73 (1988), *reh'g denied*, 487 U.S. 1263 (1988). The Court also held that doubts on identity, even residual ones, do not relate to mitigating evidence concerning the character, record, or circumstances of the offense.

*Franklin*, 487 U.S. at 174. The Court also approved of the overlap between a finding of guilt in an underlying felony supporting a capital offense and the reuse of that felony to prove an aggravator in the sentencing phase. *Lowenfield v. Phelps*, 484 U.S. 231, 241-46 (1988), *reh'g denied*, 485 U.S. 944 (1988). This Court has denied residual doubt as a mitigating factor. *Minnick v. State*, 551 So. 2d 77 (Miss. 1988), *rev'd on other grounds*, 498 U.S. 146 (1990), *overruled on other grounds by Willie v. State*, 585 So. 2d 660 (Miss. 1991).

¶28. As to the principle of collateral estoppel in criminal cases, the Supreme Court has thus far only allowed its use in acquittals, where the principle was applied in conjunction with double jeopardy to bar reprosecutions for the same offense. *Ashe v. Swenson*, 397 U.S. 436, 444-45 (1970). The United States Supreme Court has stated that the Double Jeopardy Clause applies to separate trials, but not guilt and punishment phases of the same trial. *Schiro v. Farley*, 510 U.S. 222, 231(1994), *reh'g denied*, 510 U.S. 1215 (1994).[5] However, the *Schiro* Court was not called upon to consider collateral estoppel against the defendant, but only the prosecution. *Schiro*, 510 U.S. at 231. The Supreme Court has yet to answer whether collateral estoppel applies to bar the defense from relitigating an issue, as opposed to the government.[6]

¶29. At least one lower federal court requires the sentencing jury to hear evidence supporting innocence. *Chaney v. Brown*, 730 F.2d 1334, 1351-52 (10th Cir. 1984), *cert. denied*, 469 U.S. 1090 (1984). Lower federal courts split over the general issue of collateral estoppel barring relitigation of findings of guilt by a jury. Some federal courts prohibit such evidence. *United States v. Pelullo*, 14 F.3d 881, 896 (3rd Cir. 1994), *rev'd on other grounds*, 105 F.3d 117 (3rdCir. 1997); *United States v. Hurnage*, 976 F.2d 633, 635 (11th Cir. 1992) (holding collateral estoppel should not be applied to criminal defendant); *Flittie v. Solem*, 775 F.2d 933, 940 (8th Cir. 1985),*cert. denied*, 475 U.S. 1025 (1986).

¶30. However, other courts have permitted evidence of findings of guilt to collaterally estop the defendant in later proceedings. *Hernandez-Uribe v. United States*, 515 F.2d 20, 21-22 (8th Cir. 1975), *cert. denied*, 423 U.S. 1057 (1976); *United States v. Colacurcio*, 514 F.2d 1, 6 (9th Cir. 1975). We adopt the logic of *Hernandez- Uribe*. We hold that because of the finding of guilt by the prior jury, Holland is barred by res judicata from relitigating the prior jury verdict of guilt and is collaterally estopped in these proceedings from attacking his guilt.

¶31. Holland argues that our caselaw requires the trial court to permit his presentation of evidence on whimsical or residual doubt. Our caselaw has prohibited counsel from doing more than asserting whimsical doubt at closing argument. This Court has rejected a defendant's submission of a whimsical doubt jury instruction. *Hansen v. State*, 592 So. 2d 114, 150-51 (Miss. 1991), *cert. denied*, 504 U.S. 921 (1992), *reh'g denied*, 505 U.S. 1231 (1992). Other states are split on the subject. Florida expressly prohibits the submission of evidence on whimsical doubt. *King v. State*, 514 So. 2d 354, 358 (Fla. 1987), *cert. denied*, 487 U.S. 1241 (1988); *see also Ruiz v. State*, 772 S.W.2d 297, 308 (Ark. 1989); *People v. Fields*, 552 N.E.2d 791, 813 (Ill. 1990),*cert. denied*, 498 U.S. 881 (1990), *reh'g denied*, 498 U.S. 994 (1990). Other states allow argument on residual doubt. *See, e.g., Moon v. State*, 375 S.E.2d 442, 452 (Ga. 1988), *cert. denied*, 499 U.S. 982 (1991), *reh'g denied*, 501 U.S. 1224 (1991); *State v. Tyler*, 553 N.E.2d 576, 583 (Ohio 1990), *cert. denied*, 498 U.S. 951 (1990).

¶32. The United States Supreme Court states that defendants have no constitutional right to

reconsideration of residual doubt on sentencing. *Franklin*, 487 U.S. at 174. The *Franklin* Court noted such a right would be inconsistent with penalty-only trials, such as resentencings, which are not themselves violative of the Eighth Amendment. *Id.* at 173 n.6.

¶33. Most federal courts generally follow *Franklin*. *Evans v. Thompson*, 881 F.2d 117, 120 (4th Cir. 1989), *cert. denied*, 497 U.S. 1010 (1990); *Coleman v. Saffle*, 869 F.2d 1377, 1393 (10th Cir. 1989), *cert. denied*, 494 U.S. 1090 (1990), *reh'g denied*, 496 U.S. 913 (1990). However, the Fifth Circuit has implied such evidence may be relevant at sentencing. *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985).

¶34. Holland argues that the trial court's refusal to allow him to relitigate these issues of guilt denied him the right to argue whimsical or residual doubt as to the validity of the conviction. Holland relies on *Hansen*, 592 So. 2d at 150-51 and *Minnick*, 551 So. 2d 77, for the proposition that he was entitled to, but was denied the right to argue whimsical doubt to the jury.

¶35. The Supreme Court in *Franklin*, *supra*, has held that arguing that residual doubt was not a mitigating factor as it did not go to the issue of a defendant's character, record, or circumstances of the offense, but only to doubt about a defendant's guilt, which is not in the strictest sense, a mitigating factor. *Franklin*, 487 U.S. at 174. The Supreme Court further analyzed this holding in *Penry v. Lynaugh*, 492 U.S. 302, 315-319 (1989).

¶36. In the case at bar, there is no residual doubt that could be argued. This Court has already affirmed Holland's conviction of capital murder committed while engaged in the underlying felony of rape. Accordingly, this Court's prior affirmance of guilt precludes any residual or whimsical doubt as to the validity of Holland's conviction.[7] We hold that there can be no error in denying Holland the right to argue residual or whimsical doubt, since it is not a mitigating factor that is constitutionally recognized.

¶37. We must not confuse what is valid, relevant mitigating evidence with evidence utilized to attack the prior verdict and affirmance of guilt. All of the evidence proposed in Holland's proffer is nothing more than an attempt to attack Holland's prior conviction, which was affirmed by this Court. In *Minnick v. State*, *supra*, in considering the defendant's refused jury instruction, which read: "The Court instructs the jury that if you have any whimsical doubt then that is a mitigating circumstance," this Court stated:

> In refusing the instruction, the trial court told defense counsel that he could argue whimsical or residual doubt to the jury if he chose, which defense counsel did. Minnick cites *Smith v. Wainwright*, 741 F. 2d 1248 (11th Cir. 1984), as support for his proposition. While that case acknowledges that a "whimsical doubt" might inure to the benefit of a defendant, the opinion does not say that the jury needs to be instructed on whimsical doubt as a mitigating factor. In fact, this discussion was in the context of the court considering an ineffective assistance of counsel claim and, tangentially, *the ramifications of a single jury sitting for both phases of a capital trial.* In a later Fifth Circuit case, *Johnson v. Thigpen*, 806 F. 2d 1243 (5th Cir. 1986), the Fifth Circuit again considered whimsical doubt in terms of such being *a beneficial by-product of the same jury sitting for both phases of the trial.* *Id.* at 1251. That discussion was in the context of what limitations may be imposed on defense counsel's argument so as not to impair the jury's consideration of residual doubt. No discussion of a jury instruction appears in

this opinion. (emphasis added).

*Minnick*, 551 So. 2d at 95.

¶38. It is clear that while this Court, and many others, allow residual doubt argument, the United States Supreme Court, and this Court, do not permit defendants such as Holland to go further with the submission of jury instruction or evidence on residual doubt.

¶39. There is very little factual information to which to apply this caselaw. This question is primarily one of law. However, the trial court's ruling affected Holland's defense in at least three ways: (1) Holland stated that he would have testified himself and that the trial court's ruling "chilled" his right to testify; (2) Holland would have put on a serologist to dispute the State's findings concerning seminal fluid in Krystal, in that the serologist would have stated that the State's finding of acid phosphatase do not necessarily mean seminal fluid was present; and (3) Holland would have put Dr. Leroy Riddick on the stand to dispute Dr. McGarry's findings of rape.

¶40. In summary, while the question of whether Holland should be allowed to relitigate his guilt, in order to allow him to rebut evidence at sentencing, is very close, the distinction here is between introducing valid mitigating evidence in the sentencing phase and introducing evidence that challenges the guilty verdict of the original jury. The evidence Holland proffered is nothing more than an attack upon the prior finding of guilt by the first jury, which was affirmed by this Court. We hold that Holland's proffered evidence is not proper mitigation evidence, that he may not argue residual or whimsical doubt to a re-sentencing jury, and that he is collaterally estopped because of the prior finding of guilt affirmed by this Court. To allow the prior verdict to be challenged in this manner is a failure to recognize that this proceeding is actually a totally separate second phase hearing, except that Holland has already been convicted of capital murder committed during the course of the rape of Krystal King and this re-sentencing jury has knowledge that Holland was previously adjudged guilty of that crime. The re-sentencing jury is allowed to rely upon that prior conviction as sufficient.

¶41. As for residual doubt, because Holland is not entitled to a jury instruction on such a doubt, Holland is not entitled to present evidence on such a doubt. *Hansen*, 592 So. 2d at 150-51.

¶42. Regarding whether the trial court in fact directed a verdict against Holland, he correctly asserts that caselaw prohibits a directed verdict against a criminal defendant. *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993) (holding such jury instructions not harmless error). Holland asserts that the exclusion of his exculpatory evidence at sentencing rendered a *de facto* directed verdict against him on the *Enmund* factors and the rape aggravator. Holland also asserts that the State should not be able to introduce all of the evidence at trial once again without allowing the defendant to rebut this evidence.

¶43. Our caselaw requires the State to prove at least one of the *Enmund* factors regarding intent to kill. *See* Miss. Code Ann. § 99-19-101(7) (1994 rev.). This requirement necessarily forces the State to include evidence impacting on guilt, which the jury could nevertheless find insufficient to impose death, despite the defendant's conviction. *Biegenwald*, 524 A. 2d at 160-61. On the other hand, the State could elect to stand on the prior conviction. Mississippi allows the State to stand on its conviction or reintroduce the evidence in the guilt phase. *Jackson*, 337 So. 2d at 1256; *see also Hill v. State*, 432 So. 2d 427, 441 (Miss. 1983)*, cert. denied*, 464 U.S. 977 (1983).

¶44. Here, contrary to Holland's claim, the trial court clearly ruled that there would be no directed verdict on the issue of murder during the commission of a rape and that Holland actually killed the victim. This allegation of error is but an attempt by Holland to mischaracterize the trial court's ruling. We hold that Holland did not suffer a directed verdict on these issues and that the State is permitted to introduce evidence of guilt, without rebuttal of that evidence because of res judicata. ***Irving***, 441 So. 2d at 851-52. "Retrial of issues only to guilt is not permitted." ***Williams,*** 684 So. 2d at 1192, *citing **Biegenwald***, 542 A. 2d at 158-61.

¶45. Holland also argues that the refusal to admit Canfield's testimony on the ground of res judicata violates compulsory process rights, the Confrontation Clause, fair trial, due process and equal protection of law guarantees, and his rights under the Eighth Amendment.

¶46. The trial court judge excluded Dr. Canfield's testimony on the grounds that, as a matter of law, this exculpatory testimony attacking the question of rape was barred in the sentencing hearing. Dr. Canfield would have testified that he found no acid phosphatase in testing vaginal swabs from Krystal, indicating that no semen was present, and therefore, that no rape occurred.

¶47. The standard of review would, therefore, be de novo. ***Bank of Mississippi v. Hollingsworth***, 609 So. 2d 422, 424 (Miss. 1992). Holland complains the actions of the trial court in excluding evidence of innocence at sentencing, such as Dr. Canfield's testimony, violates his right to compulsory process and his Confrontation clause guarantees. These rights (fair trial, due process, equal protection) are discussed above through case law in several allegations of error. Holland cites no caselaw to support the proposition that the trial court's refusal to admit Dr. Canfield's testimony violates either compulsory process or Confrontation Clause guarantees. This sub-issue is thus barred as unsupported by authority. *See, e.g., **Johnson v. State***, 626 So. 2d 631, 634 (Miss. 1993).

¶48. Notwithstanding the bar, even alternatively considering the issue on the merits, Holland has no Confrontation Clause guarantees at sentencing. ***Williams v. Oklahoma***, 358 U.S. 576, 584 (1959), *reh'g denied*, 359 U.S. 956 (1959); *see **United States v. Hammer***, 3 F.3d 266, 272 (8th Cir. 1993), *cert. denied*, 510 U.S. 1139 (1994).

¶49. Although the United States Supreme Court has not reviewed the question of compulsory process at sentencing, at least one state court requires that guarantee under some circumstances. ***State v. Wells***, 265 N.W.2d 239, 243 (N.D. 1978), *cert. denied*, 442 U.S. 932 (1979). On the merits, Mississippi caselaw holds that compulsory process requires "a fair and reasonable opportunity to confront and rebut" any evidence which supports the State's position. ***Goforth v. City of Ridgeland***, 603 So. 2d 323, 327 (Miss. 1992). Neither this Court nor any other has determined what effect, if any, a prior jury's finding of guilt would have on this right at resentencing. The question of compulsory process, in conflict with theory on res judicata, is a case of first impression for this Court. In ***Holland v. State***, 587 So. 2d 848 (1991), this Court affirmed the finding of the prior jury that Holland had murdered the victim during the course of a rape. Such proof was sufficient for the prior jury to find that the capital offense was committed during the course of a rape and that Holland had actually killed Krystal King. Nevertheless, the State re-introduced proof of the killing and rape that had previously been introduced at the first trial. Allowing Holland to rebut the proof of his guilt by calling as witnesses or reading the testimony of Dr. Canfield, Mr. Turner, Dr. Riddick and Mr. Wojtkiewicz would be allowing Holland to relitigate the issue of guilt, which we have already

determined to be res judicata.

¶50. Holland cites no cases in support of the claim that the trial court erred in denying the testimony of Dr. Riddick. Accordingly, this issue is barred from consideration. *Armstrong v. Armstrong*, 618 So. 2d 1278, 1282 (Miss. 1993); *Caldwell v. State*, 564 So. 2d 1371, 1373-74 (Miss. 1990).

¶51. The procedural bar notwithstanding, and alternatively considering the issue on the merits, we note that Holland addresses this issue on the same grounds as the allegations raised in Issues II through VII. Holland essentially argues that by disallowing rebuttal evidence against Dr. McGarry, the trial court violated Holland's constitutional rights. This issue revolves around, as do the other issues, whether res judicata at trial bars relitigation of guilt at sentencing, given Holland's constitutional rights. This allegation of error is an incarnation of the earlier addressed issues.[8] We again hold that this issue is barred due to res judicata.

*¶52.* Holland argues that the trial court's rulings unconstitutionally "chilled" his right to testify. *Rock v. Arkansas*, 483 U.S. 44 (1987) (recognizing constitutional right "to testify on one's own behalf at a criminal trial"). Holland claims that because of the trial court's ruling he not only did not testify, but also elected not to make a closing statement to the jury. Such claim was raised for the first time in Holland's Motion for New Trial. We find that this is but a mere allegation wholly unsupported by any evidence in this record and was not further developed during the hearing on the motion for a new trial. This issue is barred. *Foster v. State*, 639 So. 2d 1263, 1270 (Miss. 1994), *cert. denied*, 514 U.S. 1019 (1995), *reh'g denied*, 514 U.S. 1123 (1995); *Cole v. State*, 525 So. 2d 365 (Miss. 1987), *cert. denied*, 488 U.S. 934 (1988), *reh'g denied*, 488 U.S. 1023 (1988).

### IX. DID THE TRIAL COURT ERR IN DENYING HOLLAND FUNDS TO RETAIN THE SERVICES OF AN EXPERT IN THE FIELD OF SEROLOGY?

¶53. Holland fails to fully brief the issue in his original and reply briefs of the failure of the trial court to provide funds for an expert serologist. No authority is cited by Holland; thus, this issue is barred. *Pate v. State*, 419 So.2d 1324, 1325-26 (Miss. 1982). Accordingly, this Court bars discussion of it under *Caldwell*, 564 So. 2d at 1373-74.

¶54. The bar notwithstanding, alternatively we consider the issue on its merits. Holland asserts that a serologist would have testified to Holland's innocence. Specifically, he argues that this serologist would state that the presence of acid phosphatase in Krystal's body does not necessarily mean semen was present. The trial judge excluded the serologist's testimony and refused to provide Holland funds for that serologist because, in the trial judge's view, such exculpatory evidence was impermissible at sentencing, as a matter of law.

¶55. The standard of review is de novo, since the trial court's refusal was based upon law. *Bank of Mississippi v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992). The general standard of review for a trial court's refusal to provide an expert witness is substantial need for that expert. *Hansen*, 592 So. 2d at 125. The general standard of review for a trial court's decision on a question of admissibility of an expert's opinion is whether the expert's testimony would "assist the trier of fact in making a determination on the ultimate issue." *Lentz v. State*, 604 So. 2d 243, 246 (Miss. 1992). Having affirmed the bar on exculpatory evidence in sentencing, this Court holds that the trial court's decision in this case was correct. Holland asserts in his trial brief that the serologist's testimony would go to

guilt or innocence and would assist the trier of fact on a relevant issue. This Court cannot address the issue of substantial need, as it was not considered by the trial court. *Beard v. Stanley*, 205 Miss. 723, 735, 39 So. 2d 317, 321 (1949).

### X. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION IN LIMINE TO PRECLUDE THE PROSECUTION AT HOLLAND'S RE-SENTENCING HEARING FROM INTRODUCING ANY EVIDENCE OR WITNESS TESTIMONY THAT IS NOT RELEVANT TO STATUTORY AGGRAVATING CIRCUMSTANCES?

¶56. Holland claims in a motion in limine that the state should be precluded from introducing evidence not relevant to the statutory aggravating circumstances. This assignment of error reaches the same issues addressed in assignment of error VI.

¶57. In 1983 the legislature amended the capital sentencing statute, Miss. Code Ann. §99-19-101 (Supp. 1994). *See White v. State*, 532 So. 2d 1207, 1219 (Miss. 1988). The amendment codified the *Enmund* factors that a sentencing jury must find, in order to impose a death sentence, that the defendant actually killed, that the defendant attempted to kill, that the defendant intended that a killing take place, or that the defendant contemplated that lethal force be used. Miss. Code Ann. §99-19-101(7) (Supp. 1994). The written factors reflect the *Enmund* requirement that jurors find intent to kill before a capital sentence may be imposed. *Enmund v. Florida*, 458 U.S. 782, 798-801 (1982) .

¶58. In *White v. State*, this Court clearly established that the State must present evidence on the *Enmund* factors to reach or exceed the level of reasonable doubt. *White*, 532 So. 2d at 1219.[9]As a result, any *Enmund* findings are vulnerable to attack for sufficiency of the evidence errors, without proof being submitted at sentencing by the State, reaching the standard of beyond a reasonable doubt. *Id*. at 1220. The *Carr* Court recently reaffirmed *White*'s holding that *Enmund* factors must be supported with "credible evidence." *Carr v. State*, 655 So. 2d 824, 854 (Miss. 1995), *cert. denied*, ____U.S.____, 116 S. Ct. 782 (1996).

¶59. Therefore, it is not only permissible, but mandatory, that the State be required to put on evidence impacting on the intent of the accused, which is the mens rea of the underlying crime. *See, e.g, Myers v. State*, 522 So. 2d 760, 761 (Miss. 1988) (recognizing element of mens rea at criminal law). The State has the right and is required to not only present evidence of aggravators, but also evidence impacting on *Enmund* factors. We find that there was no error in the trial court's denial of this instruction.

### XI. DID THE TRIAL COURT ERR IN ALLOWING THE PROSECUTOR TO INTRODUCE INTO EVIDENCE A COPY OF THE INDICTMENT AND A CERTIFIED COPY OF THE JURY VERDICT FROM THE GUILT-INNOCENCE PHASE OF HOLLAND'S PREVIOUS TRIAL?

¶60. Holland asserts that the trial court erred in admitting evidence on the result of a former trial. Holland asserts that Mississippi caselaw bars the introduction of this evidence. *Merchants Co. v. Hutchinson*, 199 So. 2d 813, 816 (Miss. 1967). Holland's reasoning is misplaced for two reasons.

¶61. First, this Court has not styled the sentencing part of a capital case as a separate trial, in which

evidence of the conviction for capital murder would be inadmissible. Instead, this Court has called that part of the case a "phase" permitting the State, at sentencing, to rest on the conviction or introduce evidence in the guilt phase to prove any aggravators requiring such evidence. *Jackson v. State*, 337 So. 2d 1242, 1256 (Miss. 1976) ("We now hold that a trial in which the defendant is subject to receiving the penalty of death must be conducted in two phases [guilt and sentencing]."), *superseded by statute on unrelated grounds as recognized by Gray v. State*, 351 So. 2d 1342, 1349 (Miss. 1977).

¶62. Second, Mississippi does allow the use of prior convictions in sentencing trials if the convictions can be shown to go to an aggravator. *See, e.g., Hansen*, 592 So. 2d at 145 (holding that ten prior convictions are admissible as rebuttal evidence, but cannot be aggravators by themselves). Furthermore, this Court has upheld the introduction of all evidence in the guilt phase, wherever such evidence is relevant to sentencing issues, including the conviction for the underlying crimes itself. *Hill*, 432 So. 2d at 441.

¶63. On the federal level, the United States Supreme Court permitted the introduction of prior convictions at the capital sentencing phase, finding that no due process or other constitutional guarantees were infringed. *Barclay v. Florida*, 463 U.S. 939, 956 (1983), *reh'g denied*, 464 U.S. 874 (1983). Other federal courts have followed *Barclay*. *Sidebottom v. Delo*, 46 F.3d 744, 756-57 (8th Cir. 1995), *cert. denied*, 116 S. Ct. 144 (1995).

¶64. Holland offers no legal support to demonstrate that this Court has defined trial and sentencing within a capital case as two separate trials. This Court need not consider an issue that is not supported by authority. *See Thibodeaux v. State*, 652 So. 2d 153, 155 (1995); *See also, Roberson v. State*, 595 So. 2d 1310, 1318 (1992). Second, Holland does not dispute the introduction of prior convictions at trial, where relevant. Even under Holland's logic, his own conviction would be a prior trial, and admission of it where relevant to an aggravator or *Enmund* factor would not cause error. There is no merit to this issue.

## XII. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION FOR A CRIMINAL HISTORY OF THE VICTIM?

¶65. Holland argues that he was entitled to Krystal King's criminal history. Holland asserts that this information would have been relevant to the question of guilt, or to Miss. Code Ann. §99-19-101(6)(c). This mitigator/statute allows evidence on the question of "[t]he victim was a participant in the defendant's conduct or consented to the act." Miss. Code Ann. §99-19-101(6)(c) (1994 rev.).[(10)]

¶66. Holland cites *Brady v. Maryland*, 373 U.S. 83, 87 (1963) for the proposition that a due process violation is automatically triggered upon a suppression of any evidence material to guilt or punishment, regardless of good faith.

¶67. However, the United States Supreme Court developed a materiality standard for *Brady* violations. *United States v. Agurs*, 427 U.S. 97, 114 (1976). In *Agurs*, the Court was faced with a prosecutor who failed to release a victim's criminal record and was consequently attacked with a *Brady* violation. *Agurs*, 427 U.S. at 114. The Court stated that no *Brady* violation exists where the evidence in question would not raise a reasonable doubt about guilt under the circumstances. *Id*. The Court further refined the *Brady* problem later by stating that there was no violation of a defendant's

*Brady* rights unless the omission of evidence created a "reasonable probability" of changing the outcome of a given case. *United States v. Bagley*, 473 U.S. 667, 684 (1985).

¶68. Other states have applied *Brady* to their own caselaw. New York stated that, absent a connection between the victim's criminal record to the crime with which the defendant was charged, the victim's record was collateral and the State could properly move to suppress it. *People v. Battlee*, 505 N.Y.S.2d 10, 11 (N.Y. App. Div. 1986). Georgia stated that the victim's criminal record was properly withheld when the purpose of its use was inconsistent with the facts and circumstances of the case. *Howard v. State*, 308 S.E.2d 167, 169 (Ga. 1983).

¶69. Applying the materiality standard, the facts of Krystal's death should be considered. Holland argues that Krystal's criminal record, regarding use of a knife, would implicate her participation in the crime to her own body. However, Dr. McGarry testified as to the sequence of Krystal's injuries, beginning with the blows to her face, arms, and legs, then the injuries to her vagina and rectum, supposedly consistent with forceful sexual penetration. Only after those injuries did the stab wound to Krystal's heart occur, according to the forensic pathologist. Krystal then suffered a shirt being knotted around her throat and a pair of panties being stuffed into her throat, which caused her death. Krystal also suffered a skull-breaking blow to the back of her head, occurring close to the time of her death.

¶70. We hold that any record of Krystal's criminal activity would not meet the *Agurs* and *Bagley* materiality standards. Even if Krystal engaged in knifeplay with Holland, she certainly did not help him inflict these additional wounds to her own body, and indeed, many of these injuries occurred before her knife wound.[(11)] It would be illogical to believe that any human being would consent to having a pair of underwear stuffed into his or her throat, nor would Krystal have possibly helped Holland to hit her with sufficient force to fracture her skull, in the back of her head.[(12)] As a result, this Court finds that evidence of knifeplay in Krystal's criminal record, assuming *arguendo* that it exists, would not raise a reasonable doubt as to the outcome of this case. We find no error regarding this issue.

### XIII. DID THE TRIAL COURT ERR IN REFUSING TO HEAR HOLLAND'S MOTION TO SUPPRESS THE CONFESSION?

¶71. Holland raised this identical issue in his previous appeal on this case. The facts and circumstances surrounding the issue of its validity were exhaustively analyzed, with the Court concluding that Holland knowingly waived his rights in giving his confession. *Holland I*, 587 So. 2d at 862.

¶72. Here, on resentencing, Holland attempted to reopen suppression hearings regarding his confession, stating that he did not have experience with *Miranda* rights. The trial court then asked Holland if he had any new evidence to offer the court. In response, Holland indicated that he did not have as much experience with *Miranda* rights as the *Holland I* opinion stated. After discussing the relevance of the findings in the *Holland I* opinion, the trial court refused to hold the suppression hearing.

¶73. The question, in short, is whether a suppression hearing should have been granted. Holland relies on *West v. State* in arguing that on retrial, all issues, including that of evidence admissibility,

are to be retried *de novo*. *West v. State*, 519 So. 2d 418, 425 (Miss. 1988). Holland has misapplied *West* as that case is clearly distinguishable because it concerned a retrial on both guilt and sentencing, not sentencing alone. *West,* 519 So. 2d at 418-19.

¶74. The State correctly argues that *Jordan v. State* settled this issue, stating that res judicata on admissibility of a tape recording bars relitigation at resentencing. *Jordan v. State*, 518 So. 2d 1186, 1189, *cert. denied*, 488 U.S. 818 (1988). This Court refused to address the issue of a suppression hearing through res judicata, where the confession issue was fully litigated in the guilt phase of the first trial. *Jordan*, 518 So. 2d at 1189. Again, as in *Jordan*, we hold that Holland is barred because the issue is res judicata.

¶75. The bar notwithstanding, alternatively we address the issue on the merits. The United States Supreme Court held that Fifth Amendment privileges against self-incrimination apply at sentencing. *Estelle v. Smith*, 451 U.S. 454, 462 (1981); *State v. Tinkham*, 871 P.2d 1127, 1129-31 (Wash. Dist. Ct. App. 1994). However, in this case, Holland's Fifth Amendment rights have been litigated once before, thereby distinguishing the case at bar from *Estelle* and other cases.

¶76. Other states have held that a defendant's motion to reconsider a suppression hearing on voluntariness, under these circumstances, would be barred under res judicata, where the type of additional evidence asserted was likely available at the first hearing. *People v. Brownell*, 462 N.E.2d 936, 941 (Ill. App. Ct. 1984); *State v. Gilbert*, 283 S.E.2d 179, 181 (S.C. 1981),*cert. denied*, 456 U.S. 984 (1982). Alternatively, the trial court would be required to hold the suppression hearing at sentencing if the confession could not have been litigated at the first trial. *Brownell*, 462 N.E.2d at 936.

¶77. We find that this issue lacks relevance because Holland's alleged ignorance of the meaning of his *Miranda* rights was evidence which Holland could well have asserted in his first trial, since he presumably knew about his own knowledge of *Miranda* all along. Accordingly, this Court, under the authority of *Brownell* and *Gilbert*, rejects this issue as being without merit. The issue is barred and is alternatively without merit.

### XIV. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION FOR A NEUROLOGICAL EXAM?

¶78. Holland requested a neurological examination, including a Computer Assisted Tomography (CAT) scan and an Magnetic Resonance Imaging (MRI) scan, to determine brain damage. Holland testified during proffer that he was often hit on the head as a child, had scarlet fever, and was almost asphyxiated in an accident. Holland stated that he had also suffered blows to his head in car accidents. The trial court refused to listen to more of Holland's testimony because the court concluded that medical testimony was necessary regarding the need for this neurological examination. Holland's counsel told the court that Holland needed the examinations before he could find an expert to testify on his ability to appreciate the criminality of this conduct, which is a mitigating circumstance.

¶79. The State, arguing in opposition, stated that an expert should first testify that the tests are needed, rather than having the tests done first. The trial court stated that Holland must first obtain an expert affidavit establishing the need for such an examination before Holland's request would be

granted. Holland later produced an affidavit from Dr. Marc Zimmerman, a forensic psychologist, but the trial court again denied the examination. Holland now argues that Zimmerman's affidavit states that such an examination was needed, and that the requested examination should have been granted by the trial court.

¶80. Mississippi caselaw states expert assistance should be granted upon a showing of substantial need. *Butler v. State*, 608 So. 2d 314, 321 (Miss. 1992). The standard of review is abuse of discretion. *Id.* at 321. "Undeveloped assertions" of helpfulness to the defense are insufficient to show that need. *Hansen*, 592 So. 2d at 125.

¶81. The United States Supreme Court uses similar standards. *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985) (undeveloped assertions will not suffice for showing of need), *vacated on other grounds*, 479 U.S. 1075 (1987); *Ake v. Oklahoma*, 470 U.S. 68, 86 (1985) (showing of mental incapacity as a significant factor in trial sufficient to raise constitutional guarantee to expert assistance).

¶82. Here, there is no showing that a neurologist, who presumably could have given an opinion on the need for a neurological examination, could not have been obtained from the state hospital. *See Butler*, 608 So. 2d 314, 321 (Miss. 1992) (examination by state supplied psychologist sufficient to fulfill *Ake* requirements). One federal district court has also held *Ake* inapplicable to neurological examinations, as such examinations are medical and not psychological in nature. *Davis v. Singletary*, 853 F. Supp. 1492, 1540 n.39 (M.D. Fla. 1994).

¶83. It appears that a neurological examination would have been helpful in determining the existence of brain damage and in establishing a mitigator on capacity to appreciate one's conduct. *See* Miss. Code Ann. §99-19-101(6)(f) (1994 rev.). However, Holland wholly failed to meet the established criteria for proving a substantial need; therefore, the trial judge was correct in his denial of such expert.

¶84. This Court has repeatedly addressed this issue and required a demonstration by a defendant of "substantial need" rather than an mere assertion of claims and allegations. In *Hansen*, 592 So. 2d at 125, concerning the question of appointment of a pathologist and an investigator as an expert, this Court held that "the Constitution does not require the State to furnish an investigator absent a showing of **substantial need**." *Id*. (emphasis added). The Court further stated, "The accused is required to offer concrete reasons for requiring such assistance, not 'undeveloped assertions that the requested assistance would be beneficial.'" *Id*., *citing Caldwell*, 472 U.S. at 323 n.1. This same standard has also been applied to other types of experts. *See Butler v. State*, 608 So. 2d 314, 321 (Miss. 1992) (psychiatrist and investigator); *Griffin v. State*, 557 So. 2d 542, 550-551 (Miss. 1990) (psychologist and ballistics expert); *Pinkney v. State*, 538 So. 2d 329, 343 (Miss. 1988) (investigator), *vacated on other grounds*, 494 U.S. 1075 (1990). Obviously, the same standard applies to all experts.

¶85. This Court most recently revisited this issue in *Harrison v. State*, 635 So. 2d 894 (Miss. 1994), concerning the denial of a forensic pathology expert by the trial court. The Court reversed because the defendant's mental health was a significant factor at trial, as developed by the State on direct through its witness, Dr. McGarry. There, the defense was certainly entitled to rebut such evidence. In addition, the State failed to comply with Uniform Circuit Court Criminal Rule 4.06 on this very issue;

thus, the error was compounded. Nevertheless, this Court again stated:

> Of course a defendant must come forth with **concrete reasons, not unsubstantiated assertions** that assistance would be beneficial.

*Harrison*, 635 So.2d at 901. Harrison's attorneys clearly demonstrated a substantial need and thus met the established criteria under our caselaw to entitle the defendant to such an expert.

¶86. Here, contrary to *Harrison*, Holland was merely conducting a fishing expedition in an attempt to show a mental disorder resulting from brain damage due to injuries suffered as a child. More importantly, it does not escape this Court's notice that Dr. Zimmermann's affidavit does not contain a diagnosis that Holland is suffering from any mental disorder whatsoever, much less any brain damage. Simply put, there is no diagnosis of Holland, but rather Dr. Zimmermann uses the terms "organic brain dysfunction and organic brain damage" as interchangeable terms and states that "the medical community generally accepts as reliable the results of neuropsychological testing of the type I performed on Gerald Holland." How can Holland have possibly established the proper criteria before the trial judge without any mention of a diagnosis by Dr. Zimmermann? Where is the proof of substantial need? We find that there is none. The trial judge was correct under these circumstances in denying such an expert. Determination of substantial need is within the discretion of the trial court. *Hansen*, 592 So. 2d at 125. Substantial need criteria was not demonstrated by Holland. *Caldwell*, *supra*; *Johnson v. State*, 529 So. 2d 577, 589 (Miss. 1988); *Pinkney*, 538 So. 2d at 343; and *Griffin*, 557 So. 2d at 550-51. Additionally, Holland's refusal to obtain a state neurologist is also grounds to affirm this issue. Holland did not want the State to use in cross-examination the medical records on which Dr. Zimmerman relied in forming his stated opinion. When Holland placed his mental condition in issue he waived the privilege to those medical records relied on by Dr. Zimmerman. Rule 503(f), Miss. Rules of Evidence states:

> Any party to an action or proceeding subject to these rules who by his or her pleadings places in issue any aspect of his or her physical mental or emotional condition thereby and to that extent only waives the privilege otherwise recognized by this rule. This exception does not authorize ex parte contact by the opposing party.

¶87. Rule 703, Miss. Rules of Evidence states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the fact or date need not be admissible in evidence.

¶88. Rule 611(b), Miss. Rules of Evidence states:

> **Scope of Cross-Examination**. Cross-examination shall not be limited to subject matter of direct examination and matters affecting the credibility of the witness.

¶89. Under the Rules of Evidence, the State was entitled to cross-examine Dr. Zimmerman on the basis of his opinions, including any medical records he considered in forming those opinions. No medical privilege existed since Holland placed his mental and emotional condition in issue. The trial

court properly overruled the motion in limine to prohibit cross-examination of Dr. Zimmerman on the basis of his opinions.

¶90. Holland is in error when he says that the record shows he was drinking hard liquor on the night of the murder. The record shows only that there was a bottle of tequila and beer cans and a glass containing what looked like Coca Cola. William Boyer never stated that he saw Holland drink anything. This was mere speculation on his part. Jerry Douglas stated that Holland basically drank beer and that he seldom mixed beer with hard liquor. Douglas stated that in the years he had known Holland he had only seen Holland mix liquor and beer three or four times. Douglas stated that when Holland mixed the two he "seemed to be a little more aggressive." However, Douglas could recall Holland drinking only beer on the night of the murder. Douglas did say that there was a bottle of tequila in the house. Douglas stated that Holland drank beer after the murder while Holland was disposing of Krystal's body.

¶91. The question that Holland contends as error, asked on voir dire of Dr. Zimmerman regarding his qualifications as an expert, was objected to, and the objection was sustained by the trial court, a fact admitted by Holland. When a trial court sustains an objection it cures any error. Thus, error, if any, was cured or was harmless beyond a reasonable doubt.

¶92. Further, when we look to the cross-examination by the State of Dr. Zimmerman we do not find any objections to the claimed erroneous questions or to the State testifying. These claims are waived as being raised for the first time on this appeal. *Chase,* 645 So. 2d 829 (Miss. 1994), *cert. denied*, 115 S. Ct. 2279 (1995); *Foster*, *supra*, *Cole*, *supra*. Upon reading the testimony of Dr. Zimmerman, he acquitted himself well on both direct examination and cross-examination. Dr. Zimmerman was allowed to testify that he found indications of brain dysfunction without objection. The State's cross-examination was simply testing Dr. Zimmerman's conclusions and opinions. Certainly, that is the proper function of cross-examination. The State may certainly rebut mitigating evidence either by cross-examination or rebuttal evidence and may comment on the inferences to be drawn from the evidence in closing argument. *Hansen*, 592 So.2d at 144-52.

¶93. The comments on closing argument to which Holland's claim refers were not objected to by Holland. This claim is waived for the lack of an objection. *Chase, supra; Foster, supra; Cole, supra.* Even so, such was fair comment on the evidence introduced at trial and merely disparaged the mitigating evidence offered by Holland. *Hansen, supra.* The prosecutor's comment on not finding anything wrong with Holland's IQ in the earlier test was objected to by the defense. This objection was overruled. The prosecutor corrected himself regarding the IQ comment in his next statement. The test relied on by Dr. Zimmerman indicated that Holland was normal in the earlier test. We find no merit to this issue.

### XV. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION FOR CHANGE OF VENUE?

¶94. Holland received a change of venue in the first trial, *Holland I*. The trial court refused to change venue at the re-sentencing trial. The trial court held a hearing with jurors selected for another case to determine the extent of their knowledge about Holland. Some jurors knew about the case and said it would affect their verdict, while others did not.

¶95. Holland asserts that at jury selection, several jurors knew about Holland's case and were affected by it, namely Mr. Joseph, who did not serve, Ms. Rosskopf, who did not serve, and Mr. Myrick, who did not serve. Other jurors who did serve knew of the case, but stated they could put aside their opinions, namely Ms. Larson and Ms. Scarborough.

¶96. A presumption of inability to conduct a fair trial in a venue arises with an application for change of venue, supported by two affidavits affirming the defendant's inability to receive a fair trial. ***Porter v. State***, 616 So. 2d 899, 905 (Miss 1993). In addition, adverse and prejudicial pretrial publicity may demonstrate the inability to obtain a fair jury in that venue. ***Johnson v. State***, 476 So. 2d 1195, 1211 (Miss. 1985). Continuing evidence of prejudicial feelings could lead to a requirement for change of venue, even with substantial length between crime and trial. ***Coleman v. Kemp***, 778 F.2d 1487, 1541 (11th Cir. 1985),*cert. denied,* ***Kemp v. Coleman***, 476 U.S. 1164 (1986), *reh'g denied*, 478 U.S. 1014 (1986).

¶97. However, the State can rebut this showing by proving from voir dire that the trial court impaneled an impartial jury. ***Harris v. State***, 537 So. 2d 1325, 1329 (Miss. 1989). If the State demonstrates such, this Court will not overturn the trial court's finding that an impartial jury could be found, despite adverse publicity. ***Harris***, 537 So. 2d at 1329. This Court reviews the trial court's finding under an abuse of discretion standard. ***Id.*** In any case, this Court will treat with deference a venire person's assertions of impartiality. ***Scott v. Ball***, 595 So. 2d 848, 850 (Miss. 1992).

¶98. Two factors are evaluated. First is the level of adverse publicity, both in extent of coverage and its inflammatory nature. Second is the extent of the effect the publicity had upon the venire persons in the case.

¶99. Comparing the case at bar with ***Harris v. State*** is proper here. ***Harris*** involved a brutal rape covered at least twice by television. ***Harris***, 537 So. 2d at 1327. A radio station manager affirmed that the station had aired five press reports before trial. ***Id.***

¶100. Here, the local television station prepared at least thirteen clips containing news from the original trial in 1987 and 1988, but none for resentencing.

¶101.As for newspaper coverage, ***Harris*** featured nineteen newspaper articles discussing the proceedings before and during Harris' only trial. ***Id***. All presumably named Harris in its coverage, since police had arrested him the day of the crime. ***Id.*** One of these publications criticized the release of Harris on parole prior to this incident. ***Id.*** at 1328. Here, there were twenty-nine newspaper clippings concerning this case between September 1986 and May 1988, including several discussing a successful escape Holland made from the local jail.

¶102. However, only one clipping discussed this Court reversing Holland's sentence, in September 1991. There has been no television coverage on this since 1987. Holland's re-sentencing commenced on March 29, 1993, and ended on April 1, 1993. Although the level of publicity appears to be at least as great as that in ***Harris***, the lapse of time between the trial and resentencing, in which no coverage of Holland apparently occurred, effectively lessens the effect of this publicity. The fact that no more news stories were reported between 1991 and 1993 distinguishes this case from the ongoing publicity asserted as a reason for granting resentencing venue in ***Coleman***, 778 F.2d at 1541.

¶103. The second factor involves the effect of this coverage on the jury pool. In ***Harris***, fifty-two of eighty-two venire persons had some knowledge of the case. Here, only six venirepersons raised their hands expressing knowledge of this case. As stated above, several of those venire persons stated their knowledge would affect their verdict, and they were removed. Of the two sitting jurors with knowledge of the case, both stated their knowledge would not bar them from serving impartially on the jury. Of these, one juror, Joan Scarbrough, was accepted by Holland, who had two challenges left at the time.

¶104. ***Harris*** featured more immediate and inflammatory coverage by the media. Nevertheless, the trial court judge in ***Harris*** found that the defendant could have a fair trial and denied a venue change. ***Harris***, 537 So. 2d at 1329. This Court held the trial court did not abuse its discretion in its decision. Here, given the lesser coverage and effect here, this Court affirms the ruling of the trial court.

### XVI. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION FOR INDIVIDUAL SEQUESTERED VOIR DIRE?

¶105. Holland asserts that the trial court's denial of individual sequestered voir dire was error, given the publicity and circumstances in this case. Holland cites no authority for this issue, and it is accordingly barred. ***Clark v. State***, 503 So. 2d 277, 280 (Miss. 1987); ***Pate v. State***, 419 So. 2d 1324, 1325-26 (Miss. 1982).

¶106. Procedural bar notwithstanding, alternatively we address the issue on the merits. This Court has consistently held that individual sequestered voir dire is not required under Mississippi Uniform Criminal Rule of Circuit Court Practice 5.02. *See, e.g.,* ***Russell v. State***, 607 So. 2d 1107, 1110 (Miss. 1992), *cert. denied*, 117 S. Ct. 436 (1996); *see* ***Hansen,*** *supra*; ***Pate v. State***, 419 So. 2d at 1325-26. Moreover, the trial court allowed individual sequestered voir dire when warranted during jury selection in this case. It cannot be said that the trial court abused its discretion in denying individual sequestered voir dire of each and every prospective juror. Limited individual sequestered voir dire was allowed as was individual voir dire in front of the entire panel. We hold that this issue is without merit.

### XVII. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION FOR INFORMATION QUESTIONNAIRES TO BE HANDED TO VENIRE PERSONS WHEN THEY APPEARED AT COURT?

¶107. Holland fails to cite authority for this proposition. Accordingly, it is procedurally barred. *See, e.g.,* ***Roberson v. State***, 595 So. 2d 1310, 1318 (Miss. 1992).

¶108. Procedural bar notwithstanding, alternatively we address the issue on the merits. Holland contends that the trial court committed reversible error in denying his motion to have a questionnaire answered by all the prospective jurors. This claim is specious. Holland cites no constitutional provision, statute, rule or caselaw that requires a trial court to allow counsel to have a questionnaire answered by prospective jurors. Other states have addressed this issue, stating that trial courts could refuse jury questionnaires offered by the defendant, where the defendant had ample opportunity to voir dire jurors. ***United States v. Phibbs***, 999 F.2d 1053, 1070-72 (6th Cir. 1993), *cert. denied,* ***Rojas v. United States***, 510 U.S. 1119 (1994).

¶109. Here, there is no evidence present that Holland did not have sufficient opportunity to otherwise generally question jurors at voir dire. In fact, the trial court allowed individual requested voir dire when warranted. Additionally, if the trial court determines not to allow a questionnaire, abuse of discretion has not occurred, as there is no provision requiring any questionnaire. Having failed to make a cogent argument or cite any authority for this claim, this claim is not presented to this Court for review. *See, e.g., **Roberson v. State**,* 595 So. 2d at 1318, ("We require that counsel not only make a condensed statement of the case but also support proposition with reasons and authorities in each case.) This claim is without merit.

### XVIII. DID THE TRIAL COURT ERR IN FAILING TO GRANT HOLLAND'S CHALLENGE FOR CAUSE OF POTENTIAL JUROR RANDOLPH?

¶110. Holland moved to exclude juror Carolyn Randolph because of her statements and actions regarding this case. Randolph apparently gave contradictory answers on her impartiality. She first stated that nothing in her experience would influence her ability to be impartial. Then, Randolph could not say that her objectivity would not be clouded by her knowledge. She then stated that she could vote either way. Finally, she stated she could base her decision on the law and evidence. When Holland asked Randolph questions at voir dire, she stated that she would want the burden of proof for life imprisonment shifted to Holland.

¶111. Holland was denied a challenge for cause. The trial court stated that since Randolph said she could follow the law, she could serve on the jury. Holland exercised a peremptory challenge to remove Randolph. Holland had peremptories available at that time, but used them all before the end of jury selection.

¶112. No reversible error results where the defendant had peremptory challenges remaining at the point where the trial court fails to sustain a challenge for cause. **Mettetal v. State**, 615 So. 2d 600, 603 (Miss. 1993). The United States Supreme Court has also held that where the resulting jury was fair and impartial, the loss of a peremptory challenge does not result in a Sixth Amendment violation. **Ross v. Oklahoma**, 487 U.S. 81, 88 (1988), *reh'g denied*, 487 U.S. 1250 (1988). The **Ross** Court further stated that reversible error, in a court's failure to grant a challenge for cause, arises only where (1) the defendant exhausts all peremptories and (2) an incompetent juror is forced upon him. **Ross**, 487 U.S. at 89.

¶113. We hold that no reversible error exists here.[(13)] The strike used against Randolph was not Holland's last peremptory strike, but rather was number eleven. When Cecil Ladner was seated as the twelfth juror Holland simply stated that he was out of peremptory challenges and had no strike for cause against this juror. The claim is waived as Randolph did not sit on this jury. **Chase**, 645 So. 2d at 30.

### XIX. DID THE TRIAL COURT ERR IN RULING THAT POTENTIAL JURORS COULD NOT BE ASKED WHETHER THEY COULD CONSIDER SPECIFIC MITIGATING CIRCUMSTANCES WHEN MAKING THEIR SENTENCING DECISION?

¶114. Holland attempted to ask jurors a hypothetical question, as follows: "If the defendant was to raise the fact that there was alcohol possibly consumed or alcohol involved in this case would you

rule that out as a mitigating factor prior to passing on the life without parole or a death penalty?" The trial court refused to permit Holland to ask that question because it was hypothetical. However, Holland was allowed to inquire of jurors of any experience they had that "might effect [their] serving on a case where alcohol may be involved." No juror responded affirmatively to his question.

¶115. Mississippi Uniform Criminal Rule of Circuit Court Practice 5.02 prohibits asking hypothetical questions of jurors in order to get a pledge for a certain verdict. Our caselaw bars attorneys from trying to get the jury to promise that under a hypothetical set of circumstances, they will vote a certain way. *West v. State*, 553 So. 2d 8, 21-22 (Miss. 1989). The standard of review for determining the impropriety of a question is abuse of discretion. *Harris v. State*, 532 So. 2d 602, 606 (Miss. 1988).

¶116. In *Stringer v. State*, 500 So. 2d 928, 938 (Miss. 1986), this Court dealt with the issue at bar. In this case, the prosecution asked jurors if there were any jurors who "could not vote for the death penalty if he didn't himself pull the trigger . . . ." *Id.* at 938. The Court noted that reversible error does not occur per se where a prosecutor does not "specifically request a verdict during voir dire." *Id.* This Court has rejected an assertion of error where a defense counsel was prohibited from asking whether, under certain hypothetical facts, the jury could vote not guilty. *Harris* at 605-07.

¶117. Holland argues that *Morgan v. Illinois,* 504 U.S. 719 (1992) is binding on this case. The United States Supreme Court in *Morgan* stated that the defense counsel was entitled to inquire whether jurors would consider any mitigating evidence at all, or whether they would automatically impose death. *Foster v. State*, 639 So.2d 1263 (Miss. 1994), *cert. denied*, 514 U.S. 1019 (1995), *reh'g denied* 514 U.S. 1123 (1995); *Morgan v. Illinois*, 504 U.S. 719, 728-29 (1992). Justice Scalia noted in dissent that the Court would presumably apply *Morgan* to individual mitigating factors. *Morgan*, 504 U.S. at 744 n.3 (Scalia, J., dissenting). *Morgan* fails to support Hollands argument.

¶118. Other states have directly addressed the question of individual mitigating factors. An Oklahoma appellate court determined that inquiries into how jurors feel about individual mitigating factors, and whether they could consider each factor, were properly denied. *Plantz v. State*, 876 P.2d 268, 278-79 (Okla. Crim. App. 1994), *cert. denied*, 513 U.S. 1163 (1995). Texas courts have held that jurors' beliefs on the weight they would give an individual mitigator were insufficient to make them subject to challenge for cause, where they were not otherwise biased against the law. *Allridge v. State*, 850 S.W.2d 471, 481-82 (Tex. Crim. App. 1991), *cert. denied*, 510 U.S. 831 (1993). In light of the holdings of other states that jurors cannot be asked to give weight to aggravators at voir dire and in light of the inapplicability of *Morgan*, we find no error and affirm the trial court. There is no merit to Holland's argument.

### XX. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION TO QUASH THE JURY VENIRE OR DECLARE A MISTRIAL WHEN DEPUTY SHERIFF PAUL M. JOSEPH STATED THAT HE "WAS IN COMPLETE AGREEMENT WITH THE FIRST SENTENCING THAT [HOLLAND] GOT?"

¶119. Holland claims that the trial court should have acted more forcefully when Paul Joseph's statement occurred. Joseph never stated what in fact was the first sentence Holland received. Joseph responded to the trial court's voir dire question on whether anything Joseph knew could affect his service on this case. When Joseph made his statement, Holland's counsel objected, and the trial court

asked Joseph if he had a fixed opinion. Joseph responded that he did have a fixed opinion. Holland failed to move for a mistrial or to quash the venire at that time.

¶120. Later, after juror selection was complete, Holland moved for a mistrial and/or a quashing of the venire. Although the trial court denied Holland's motion, it instructed the jury not to rely on any pretrial statements as evidence.

¶121. This Court has reversed a case in which, during questioning by counsel, 65% of a potential jury stated that the defendant was guilty. *Seals v. State*, 208 Miss. 236, 247, 44 So. 2d 61, 67-68 (1950). The Court referred to these potential jurors as an "array of men tell[ing] the court they thought this man guilty of murder . . . ." *Seals*, 208 Miss. at 250, 44 So. 2d at 68. The Court also noted one chosen juror had already formed an opinion in this case. *Seals,* 208 Miss. at 247, 44 So. 2d at 66. *But see Porter v. State*, 616 So. 2d 899, 905-06 (Miss. 1993) (even when 20 jurors expressed shock and distress by reports on defendant's actions, this Court found that since remaining jurors could be impartial, trial with this jury was proper).

¶122. Examining sister states' authority, we find that another court affirmed upon review of this issue, where a set of jurors at retrial either knew or had heard on voir dire from other jurors that the defendant had gone to jail and served time on this murder case for a previous conviction since reversed. *State v. Thompson*, 723 S.W.2d 76, 83-84 (Mo. Ct. App. 1987). The *Thompson* Court held prior knowledge of the case did not per se disqualify the entire panel. *Id.* at 84. *But see United States v. McIver*, 688 F.2d 726, 729 (11th Cir. 1982) (panel disqualified even if inadvertently exposed to conviction in related case). The *Thompson* Court also noted that the United States Supreme Court has held a juror's knowledge of past events in the case is permissible "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id., citing Dobbert v. Florida*, 432 U.S. 282, 302 (1977), *reh'g denied*, 434 U.S. 882 (1977).

¶123. Returning to the case at bar, the jury panel answered throughout voir dire that they could set aside their prejudices and reach a decision on the evidence. There was no evidence at trial that the jurors even heard Joseph, as Holland did not ask to examine the jurors about the remark. The jurors were instructed that only evidence from witnesses could form the basis of their verdict. We find that Joseph's statement did not taint the jury venire. Since Holland demonstrated no evidence of prejudice, we hold that there was no error by the trial judge in refusing to quash the panel. *West v. State*, 463 So. 2d 1048, 1054 (Miss. 1985). The jury was subsequently properly instructed on their responsibility in determining Holland's proper sentence. There is no merit to this issue.

### XXI. DID THE TRIAL COURT ERR IN ALLOWING THE PROSECUTOR TO EXERCISE HIS PEREMPTORY CHALLENGES ON TWO POTENTIAL JURORS BASED ON THEIR VIEWS OF THE DEATH PENALTY?

¶124. Holland's failure to object waived the issue. *Jones v. State*, 517 So. 2d 1295 (Miss. 1987), *vacated on other grounds*, 487 U.S. 1230 (1988), *overruled on other grounds by Willie v. State*, 585 So. 2d 660 (Miss. 1991). Procedural bar notwithstanding, alternatively, on the merits, we find none. Had the issue been raised at the proper time and in the proper manner, it would be without merit. In *Lockhart v. McCree*, 476 U.S. 162 (1986), the United States Supreme Court held:

The group of "**Witherspoon**-excludables" involved in the case at bar differs significantly from

the groups we have previously recognized as "distinctive." "Death qualification," unlike the wholesale exclusion of blacks, women, or Mexican-American fro[m] jury services, is carefully designed to serve the State's concededly legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case both at the guilt and sentencing phases of the capital trial. There is very little danger, therefore, and McCree does not even argue, that "death qualification" was instituted as a means for the State to arbitrarily skew the composition of capital-case juries.

Furthermore, unlike blacks, women and Mexican-Americans, "*Witherspoon*-excludables" are singled out for exclusion in capital cases on the basis of an attribute that is with the individual's control. It is important to remember that not all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as juror in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law. Because the group of "*Witherspoon*-excludables" includes only those who cannot and will not conscientiously obey the law with respect to one of the issues in a capital case, "appearance of unfairness."

Finally, the removal [for] cause of "*Witherspoon*-excludables" in capital cases does not prevent them from serving as jurors in other criminal cases, and thus leads to no substantial deprivation of their basic rights of citizenship. They are treated no differently than any juror who expresses the view that he would be unable to follow the law in a particular case.

*Id*. 175-76 (emphasis added.)

¶125. The United States Supreme Court clearly held that it is permissible to strike a juror for cause on the grounds of his moral or religious opposition to the death penalty. Views regarding the death penalty do not make one a member of a distinctive class that is protected under *Batson* or its progeny. Holland failed to object to the peremptory strike of these two jurors at trial, based upon their views of the death penalty being in conflict with their morals. Therefore, he is procedurally barred from asserting this issue now. *Irving*, 498 So. 2d at 318; *Chase, supra*; *Foster, supra*; *Cole, supra*.

## XXII. DID THE TRIAL COURT ERR IN DENYING HOLLAND'S MOTION TO ENJOIN THE TESTIMONY OF DR. PAUL MCGARRY?

¶126. Holland failed to raise this objection during the guilt phase. *See Holland v. State*, 587 So. 2d 848, 865-68 (Miss. 1991) (discussing Holland's trial phase objections to Dr. McGarry's testimony, speculation not being one of them). As a result, Holland's objection is barred for not having been brought contemporaneously in the trial phase. *Box v. State*, 610 So. 2d 1148, 1154 (Miss. 1992). Since all trial evidence can be used in the sentencing phase, where relevant, the reintroduction of this evidence now raises no error. *Hill v. State*, 432 So. 2d 427, 441 (Miss. 1983), *cert. denied*, 464 U.S. 977 (1983).

¶127. The bar notwithstanding, alternatively considering the issue on the merits, Dr. McGarry's testimony was not rank speculation. The general standard of review for the admissibility of qualifications of an expert to testify to areas of scientific knowledge is abuse of discretion. *Hall v. State*, 611 So. 2d 915, 918 (Miss. 1992). The State demonstrated that Dr. McGarry's testimony fell

within the bounds of forensic pathology by demonstrating that his expertise dealt with wounds, suffering, and the means of infliction of injury. Our caselaw, as well as that of other states, permits this type of testimony. *Simmons v. State,* 105 Miss. 48, 57, 61 So. 826, 828 (1913) (physician may testify as to effect of sexual intercourse upon child's female organs).

¶128. Discussion of pain by a forensic pathologist is admissible. Our caselaw has allowed forensic evidence to prove that a victim suffered a fatal heart attack as a result of trauma and stress induced by a beating and robbery. *Whittington v. State*, 523 So. 2d 966, 976 (Miss.),*cert. denied*, 488 U.S. 923 (1988); *Jackson v. State*, 441 So. 2d 1382, 1383 (Miss. 1983).

¶129. Thus, in Mississippi, a forensic pathologist may testify as to what produced the injuries in this case and what trauma such an injury would produce.[(14)] Given Dr. McGarry's qualifications in forensic pathology as well as that which the field of forensic pathology encompasses, we find that this assignment of error is without merit.

> ### XXIII. DID THE TRIAL COURT ERR IN SUSTAINING THE PROSECUTION'S OBJECTIONS TO DR. MARC ZIMMERMANN'S TESTIMONY; IN ALLOWING PORTIONS OF THE PROSECUTION'S CROSS-EXAMINATION OF DR. ZIMMERMANN, INCLUDING IMPROPER PROSECUTORIAL STATEMENTS AND QUESTIONS WITHOUT ANY BASIS IN FACT OR IN THE RECORD DURING DR. ZIMMERMANN'S TESTIMONY; AND IN ALLOWING THE PROSECUTION TO MAKE VARIOUS REFERENCES TO DR. ZIMMERMANN'S TESTIMONY IN CLOSING?

¶130. There are several assertions of error within this issue and the Court will address each one separately.

> ### a) DID THE PROSECUTOR "TESTIFY" ABOUT EEGS AND BRAIN SCANS IN HIS QUESTIONING OF THE DEFENSE PSYCHOLOGIST?

¶131. Holland asserts that the prosecutor testified when he asked Dr. Zimmermann, the defense psychologist, certain questions in cross-examination. First, during voir dire of the witness, the prosecutor asked Dr. Zimmermann if he was a medical doctor. The prosecutor then stated, "When my car doesn't run I know it doesn't run, but I don't necessarily know what's going on in the engine . . . ." The prosecutor was then interrupted by an objection. When asked by the trial court to what his questioning was leading, the prosecutor responded that "the point I'm making" is psychologists must rely on medical reports to determine the physical condition of the brain. The prosecutor then asked Dr. Zimmermann if he had to rely on medical reports to determine the physical condition of the brain. The trial court sustained the objection as going outside the purpose of determining the witness' qualifications.

¶132. Holland asserts that this questioning was error because our caselaw requires questions with evidentiary basis. *Hosford v. State*, 525 So. 2d 789, 792 (Miss. 1988). However, this assertion is distinguished from *Hosford*. First, the prosecutor in this case was arguing a point to the judge, not the jury, that psychologists were unable to discuss brain injuries, as opposed to offering evidence through questioning. Although the prosecutor's "car-engine" statement may have been testimony disguised as a question, this Court cannot evaluate the incident because it was cut short by Holland's

objection.

¶133. Another alleged error arose when Dr. Zimmermann responded on cross that Holland's medical reports, indicating Holland was normal, did not rebut his tests indicating brain dysfunction because his tests and the medical report tests measured different things. The prosecutor responded, "They [the medical reports on EEGs and brain scans] measured the physical body and its function with an EEG and a brain scan, and let's go back to your tests. Now at the time that you first saw him was he intact with reality?" Holland did not object to these alleged errors; thus, we hold that they are is procedurally barred from review absent plain error, which we decline to find. *See Box v. State*, 610 So. 2d 1148, 1154 (Miss. 1992).

¶134. Another incident arose when the prosecutor was apparently attempting to have Dr. Zimmermann admit that he relied upon brain scans and EEGs to determine physical dysfunctions of the brain. The prosecutor began to ask if the psychologist had "to rely on medical tests and diagnosis (sic) to understand the exact locus or existence of a particular brain injury?" The prosecutor then asked, "If a medical doctor has stated that there is a normal function here and a psychological test indicates some failure to perform to a standard . . . do you expect that's a physical basis or a psychological basis?" The prosecutor withdrew his question on objection, but Holland failed to ask that the prosecutor's comment be disregarded. Even if this comment were objectionable, courts have held that failure to ask the jury to disregard the statement waives objection to the statement remaining in the record. *Wade v. State*, 490 N.E.2d 1097, 1104 (Ind. 1986). We hold that the comment having been withdrawn required an objection with a request that the jury disregard. There was none, thus the statement is waived.

¶135. One alleged impropriety occurred when, in response to Dr. Zimmermann's stating he was not sure what the term "bad attitude" meant, the prosecutor stated, "You were sure on the phone the other day when I asked you that question." On the merits, this Court has held that questions which are without evidentiary basis, "inflammatory and extremely prejudicial" cause reversible error. *Hosford*, 525 So. 2d at 791-92. Since, arguably, the prosecutor would have been able to impeach Dr. Zimmermann with this line of questioning, we hold that this alleged error does not rise to the level of *Hosford*.

### b) DID THE PROSECUTOR IMPROPERLY ARGUE ABOUT A CONTRADICTION BETWEEN THE BRAIN SCAN/EEG RESULT AND HOLLAND'S PSYCHOLOGICAL TEST SCORES, AS ADMINISTERED BY DR. ZIMMERMANN?

¶136. Holland asserts finally that the prosecutor's closing arguments highlighting the apparent contradiction between the brain scans and EEG reports, finding Holland normal, and the psychologist's testimony of abnormality, constitute error. Holland contends that because Dr. Zimmermann stated the brain scans are not designed to pick up all brain injuries, the contradiction was explained.

¶137. Prosecutors are limited to arguing facts introduced in evidence, deductions and conclusions that may be reasonably draw therefrom, and application of law to facts. *Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991). With that limitation in mind, attorneys are permitted wide latitude in arguing their respective positions and theories to the jury. *Campbell v. State*, 437 So. 2d 3, 5 (Miss. 1983).

¶138. Evidence showed the brain scan and EEG results to be normal. This evidence was in conflict with the testimony of Dr. Zimmermann's, who stated that Holland's performance on neuropsychological tests indicated brain dysfunction. Dr. Zimmermann testified that there was no contradiction because the tests measured two different things. However, this testimony did not block the prosecutor from offering his theory that the brain scan and EEG results did show that Holland is normal, despite Dr. Zimmermann's own tests. Because the prosecutor's statements were based on fact, namely the tests themselves, we hold that there is no error in this issue.

### c) DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN RESTRICTING THE TESTIMONY OF DR. ZIMMERMANN BY NOT ALLOWING HIM TO TESTIFY AS TO WHAT EEGS AND BRAIN SCANS MEASURE?

¶139. The trial court refused to permit Dr. Zimmermann to testify as to whether Holland has brain injuries, but did permit Dr. Zimmermann to testify as to what brain dysfunction or brain impairment Holland has. The trial court also refused to permit Dr. Zimmermann to testify as to what brain scans and EEGs measure, on the grounds that if Dr. Zimmermann could not read the test results, he could not testify as to what they report. The trial court instructed Holland's counsel to lay a predicate concerning Dr. Zimmermann's knowledge of brain scans and EEGs. Dr. Zimmermann responded that he was not trained to read the test results and began to tell the jury what the tests measure. The prosecution objected again, and the objection was sustained by the trial court.

¶140. Nevertheless, Dr. Zimmermann was able to state that his testing was of the mind rather than of the "brain's ability to function," which is presumably what EEGs and brain scans measure. Dr. Zimmermann also testified that his psychological testing sometimes reveals brain dysfunctions when the EEGs and brain scans do not. Holland claims that the trial court's refusal to allow Dr. Zimmermann to testify as to brain injuries and to what brain scans and EEGs measure is reversible error.

¶141. The general standard in Mississippi law for determination of expert qualifications is abuse of discretion. *T.K. Stanley, Inc. v. Cason*, 614 So. 2d 942, 951 (Miss. 1992). A person need not hold a medical degree to testify to medical matters if the area of questioning is otherwise within his field of expertise. *T.K. Stanley, Inc.*, 614 So. 2d at 951. The scope of that expertise covers all information in which the expert possesses "peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by laymen." *Henry v. State*, 484 So. 2d 1012, 1015 (Miss. 1986).

¶142. Given this standard for expert testimony, it is clear that the trial court abused its discretion by not allowing Dr. Zimmermann to testify to what brain scans measure or to brain injury as opposed to brain dysfunction. Dr. Zimmermann was able to testify that his testing concentrated on the mind, as opposed to the physical function of the brain. It is clear that Dr. Zimmerman knew what brain scans and EEGs measure, and he got that point across to the jury. Second, psychologists have often been able to testify as to brain injury. *Executive Car & Truck Leasing, Inc. v. DeSerio*, 468 So. 2d 1027, 1029 (Fla. Dist. Ct. App. 1985); *Hutchison v. American Family Mut. Ins. Co.*, 514 N.W.2d 882, 886 (Iowa 1994).

¶143. The next question is whether this exclusion creates reversible error. Harmless error will result if the same evidence improperly excluded comes in by another means. *Jackson v. State*, 594 So. 2d 20,

25 (Miss. 1992). Harmless error also results if the evidence does not impinge upon a substantial right of the defendant. ***Russell v. State***, 607 So. 2d 1107, 1114 (Miss. 1992), *cert. denied*, 117 S. Ct. 436 (1996).

¶144. Dr. Zimmermann was able to testify to brain dysfunction, and as Holland admits, brain dysfunction means brain injury. Therefore, Holland cannot complain that the trial court erred in not letting him use the term "brain injury" when the term "brain dysfunction" conveyed the exact same connotation to the jury. The same evidence improperly excluded came in by another means, through a different term, "brain dysfunction," which renders any error harmless. *See **Jackson***, 594 So. 2d at 25.

¶145. As to the trial court's refusal to allow Dr. Zimmermann to testify as to what a brain scans and EEGs measure, arguably only harmless error resulted. Since Dr. Zimmermann testified to the distinction between what his tests and brain scans measure, the information was admitted into evidence, and we hold that this error becomes harmless. *See **Jackson***, 594 So. 2d at 25.

### XXIV. DID THE TRIAL COURT ERR IN ALLOWING, OVER DEFENSE COUNSEL OBJECTION, PROSECUTORIAL MISCONDUCT?

¶146. Holland states that prosecutorial misconduct occurred several times in this case, resulting in reversible error. *See **Griffin v. State***, 557 So. 2d 542, 552-53 (Miss. 1990).

### a) DID THE PROSECUTOR COMMENT ON HOLLAND'S FAILURE TO TESTIFY?

¶147. First, Holland claims that the prosecutor commented on Holland's decision not to testify when the prosecutor stated that the forensic evidence was unquestionable. He also stated that the "witness to the rape was killed and that's Krystal." There were no objections by Holland. We hold that the issue is, thus, procedurally barred. ***Chase***, 645 So. 2d at 854-55.

¶148. Procedural bar notwithstanding, alternatively we address the issue on the merits. The prosecutor's statement about the witness to the rape being killed is not error, but was instead a comment on the defense. In ***Alexander v. State***, this Court upheld a prosecutor's statement about the decedent being a witness, as follows: "I submit to you that the only people who know what happened in there is Stephanie Alexander and God. The other person that was in the room can't talk, she's dead." ***Alexander v. State***, 610 So. 2d 320, 339 (Miss. 1992). This Court held the statement was proper in that it referred to an argument Alexander's counsel had made regarding the whereabouts of the blood from the murder. ***Id.*** The Court permitted the State to make the statement in reference to whom was a witness in answering that question. ***Id.***

¶149. Here, Holland's counsel asked the jury to consider that if Holland was preventing apprehension by killing Krystal, why then did Holland not kill the others present in the house that night. We find that the prosecutor was entitled to answer that question by stating correctly that the only witness to the crime committed was Krystal King. This statement by the prosecutor was made in direct response to defense counsel's claim that because William Boyer and Jerry Douglas were two additional witnesses who knew of the crime, the prosecution's claim that Holland murdered Krystal in an effort to avoid arrest could not be submitted to the jury. The prosecutor was simply stating that both of these people were not present during the rape and that only Krystal was there.

¶150. A prosecutor, arguably, may comment on forensic evidence being unquestioned. This Court reversed a judgment where the prosecutor emphasized that the State's witnesses were unquestioned in their credibility. *Whigham v. State,* 611 So. 2d 988, 995 (Miss. 1992). There, the Court reversed because it found that the prosecutor's comments implicated Whigham's right not to testify to directly rebut the witnesses' statements. *Id.* at 996. In *Whigham*, this Court stated:

> Had defense counsel made this statement other than in answer to the opening argument of the State, the State might have plausible contention that he invited the closing remarks which followed, but this statement no doubt was made in response to the highly improper comments in opening argument.

*Id.* at 995. In contrast, it is arguably difficult to see how Holland could have rebutted the forensic evidence directly, as it required expert witnesses to describe that evidence. Read broadly, however, *Whigham* is clearly inapplicable. The argument by the prosecutor here was made in response to closing argument by the defense. We hold that *Whigham* does not apply except to uphold our "plausible contention that [Holland] invited the closing remarks which followed." *Id*.

### b) WERE THE PROSECUTOR'S COMMENTS COMPLETELY BASED UPON EVIDENCE AND FACT?

¶151. The prosecutor asserted at closing argument that he was confused by the discrepancy between the EEG and brain scan readings, which were allegedly normal, and the findings on the Benton test. Holland then objected, stating that the prosecutor had mischaracterized the evidence, stating the normal readings indicated only that the EEG and brain scan readings meant nothing was found.

¶152. A prosecutor is entitled to argue inferences based upon the evidence at trial. *Foster,* 639 So. 2d at 1290. The prosecutor's argument was based upon the evidence. It is true that Holland produced a psychologist who testified that the EEG and brain scan readings were not inconsistent with his test results. However, this evidence does not bar the prosecutor from arguing inferences contrary to the psychologist's testimony, as long as his argument is based upon the evidence.

¶153. Holland also objected to the prosecution's characterization of the defense as trying to prove Holland was "so drunk that they [didn't] know what they [were] doing." Holland states that he was attempting to offer intoxication as a mitigator, in that Holland failed to appreciate the criminality of his conduct or could not conform his conduct to the requirements of law, as opposed to an insanity defense. *See* Miss. Code Ann. §99-19-101(6)(f) (1994 rev.). Holland states the prosecutor's portrayal of his defense was a mischaracterization of the law.

¶154. It appears that the prosecutor's statements on this point were mischaracterizations of this mitigator. Holland was trying to assert through his mitigator that he could neither appreciate the criminality of his conduct nor conform his conduct to that of the law. The State's argument is that usage of such mitigator means Holland is arguing that he did not know what he was doing, which is a different standard.

¶155. In New Jersey, a trial court held that such a mischaracterization was curable if the trial court instructed the jury correctly later on the mitigating factors and their function. *State v. Bey,* 610 A.2d 814, 816 (N.J. 1992), *cert. denied*, 513 U.S. 1164 (1995); *see also People v. Moore*, 762 P.2d 1218,

1235-36 (Cal. 1988), *cert. denied*, 490 U.S. 1095 (1989), *reh'g denied*, 494 U.S. 1050 (1990).

¶156. The State's instruction S-1 correctly defined the mitigator which the prosecutor allegedly mischaracterized. As a result, this Court holds that the prosecutor's statement was cured by the trial court.

### c) DID THE PROSECUTOR MISSTATE THE LAW, CAUSING REVERSIBLE ERROR?

¶157. Holland claims the prosecutor misstated the law. To reverse on a misstatement of law, there must first be a misstatement of the law, and second, the misstatement must make the trial fundamentally unfair. *United States v. Goodapple*, 958 F.2d 1402, 1409 (7th Cir. 1992). Any statements may also be mitigated if the evidence is sufficient to support the jury's finding and the trial court instructs the jury that counsel's arguments are not evidence. *United States v. Fierro*, 38 F.3d 761, 771 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1431 (1995).

¶158. Holland claims five assertions of misstatements. First, the prosecutor stated that evidence showing Holland to be a victim of child abuse "doesn't excuse this, it doesn't go to mitigate this [this murder]." The prosecutor also stated that Holland's family wanting him to live and his mother's testimony on Holland's troubled childhood was "not mitigation, folks." Holland failed to object to either comment on the grounds of misstatement of law, and this assignment of error is therefore barred under *Harrison v. State*, 635 So. 2d 894, 903 (Miss. 1994); *Chase*, *supra*;*Foster, supra*; *Cole, supra.*

¶159. Second, Holland objects to the prosecutor stating, "When you discuss all those items [of mitigation] you still have an obligation to go back and follow the law." Third, Holland objects to the prosecutor stating, "[I]t is my strong contention that you can't do it under the sentencing instruction S-1, and you said that you would follow the law." Fourth, Holland objects to the prosecutor acknowledging that it would not be fair to get someone to set aside their moral feelings. Holland did not object to any of these statements, and these assertions are, thus, procedurally barred from review. *Box v. State*, 610 So. 2d 1148, 1154 (Miss. 1992).

### d) DID THE PROSECUTOR IMPROPERLY EXPRESS HIS PERSONAL OPINIONS?

¶160. Holland failed to object to the majority of these statements at trial. First, in response to the defense psychologist stating one cannot compare the results of two psychological tests, the prosecutor stated, "I'm confident that you can't, Doctor." Second, the prosecutor in closing argument stated he "hate[s] to hear" that the defendant used a mitigator that he could not appreciate the criminality of his conduct. Third, the prosecutor stated that he "missed" the defendant's presentation of mitigating mental problems, and that the prosecutor could not personally "think of what the duress was," which Holland allegedly claimed. Fourth, in closing argument, the prosecutor quipped "so what" to several of Holland's assertions of problems offered in mitigation. Fifth, the prosecutor exclaimed that he was glad that he didn't have to change the jury's mind about the sentence "because I think I'm probably in your way right now. I always have that feeling when I come up here." Again, we hold that because Holland did not object to these statements, they are procedurally barred. *Chase,* 645 So. 2d at 854-55.

¶161. Holland objected at trial only to the two following comments. These objections were on unrelated grounds, and thus are also procedurally barred. *Harrison v. State*, 635 So. 2d 894, 903 (Miss. 1994).

¶162. The prosecutor argued that Holland's defense of alcohol impairment and bad home life in childhood "was not mitigation, folks," and did not go "to mitigate this." On the merits, this Court has advised prosecutors not to use the pronoun "I" when arguing to a jury, so that a jury would not infer that "the prosecutor personally" feels a fact is true. *Mack v. State*, 650 So. 2d 1289, 1321 (Miss. 1994), *cert. denied*, ___U.S.___, 116 S. Ct. 214 (1995). Since the State did not use any words to tell the jury that the district attorney personally believed a fact was true, we hold that the comments were permissible. *Mack*, 650 So. 2d at 1321.

### e) DID THE PROSECUTOR IMPROPERLY INVOKE HIS POSITION AS THE GOVERNMENT'S ATTORNEY?

¶163. Holland did not object to the following comments at trial, and therefore they are procedurally barred. The prosecutor (1) stated that the death penalty scheme was being used "under an act that has been prosecuted by me since 1986," (2) stated, "The State in this case, we've done our job. It's now in your hands," and (3) stated in opening argument, "It is the position of the State that in this case the law allows and the facts demand a death penalty."

¶164. The remaining three statements were objected to on grounds which are completely unrelated to this issue on appeal. Therefore, they are procedurally barred from review. *Harrison*, 635 So. 2d at 903.

¶165. The district attorney stated, "I'm the chief law enforcement official for a three-county area. I take my job seriously." He later stated, "I had the job of charging this crime. That has been reviewed, and we're here in court today because this is one of those rare cases."

¶166. On the merits, it is improper for a district attorney, in argument to the jury, to use his position or function as a basis for convicting or more severely sentencing a defendant. *United States v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979). More specifically, a prosecutor may not comment on the fact that he has "only sought death in rare instances such as this one." *Brooks v. Kemp*, 762 F.2d 1383, 1410 (11th Cir. 1985), *vacated on unrelated grounds*, 478 U.S. 1016 (1986), *cert. denied*, 483 U.S. 1010 (1987). This argument implies that the district attorney has made the judgment already and that his decision should be binding and persuasive to the jury. *Brooks*, 76 2 F.2d at 1410.

¶167. This error does not automatically result in reversal. This statement is reviewed to see the magnitude of prejudice, the effectiveness of the curative instruction, and the strength of the evidence of the defendant's guilt. *United States v. Goff*, 847 F.2d 149, 165 (5th Cir. 1988), *cert. denied*, *Kuntze v. U.S.*, 488 U.S. 932 (1988). The trial court and the prosecutor told the jury that it was the jury's decision to determine Holland's punishment. The prosecutor told jury "it's just your decision." As such, error, if any, was cured. *State v. Bey*, 610 A.2d at 816 (N.J. 1992). The Eleventh Circuit found this information sufficient to lessen the magnitude of prejudice to a level below that requiring reversal. *Brooks*, 762 F.2d at 1413-14. Holland's guilt is not at issue. Therefore, the prosecutor's statements do not rise to reversible error.

¶168. More importantly, the statements in the case at bar, made during sentencing phase of the trial, are taken from different paragraphs in the record and were not made consecutively. They have been taken out of context. It is imperative that the statements be read in their appropriate context in light of that which the prosecutor was in fact arguing to the jury at the time. First, regarding the prosecutor's claim to be the chief law enforcement official who takes his job seriously, the prosecutor was talking about "whose responsibility it is that we are here today." The prosecutor went on to explain, "The actions of Gerald James Holland put him here. Not his daddy's." It is clear that the prosecutor was simply arguing that Holland's actions alone were responsible for him being on trial for capital murder, rather than the actions of "dysfunctional" family members.

¶169. Regarding the prosecutor's second statement that his job was to charge the crime, that such had been reviewed, and that the case was before the court because of "one of those rare cases," it is clear that this statement does not affect the sentencing phase of trial. Holland might have a valid argument had this statement been made during the guilt phase. Such is not the case here. The prosecutor was merely stating that Holland had been charged with the crime and had been found guilty by the jury, thereby creating one of the rare cases which could warrant the jury in returning the death penalty. The statement does not imply that death was the only sentence, nor does it imply that the prosecutor had already determined that the sentence should be death. The prosecutor stated, "Does that mean it's tough, sure it's tough. Does it mean it's just your decision, yes, it's just your decision." Clearly, the jury had two choices in sentencing, and this jury was simply told that the decision was theirs to make.

¶170. Finally, defense counsel did object to the prosecutor's statement that "it's an act that has been prosecuted by me since 1986," but stated in the process, " I don't know if he's synopsizing evidence or making testimony." Although the objection is somewhat unclear, the trial judge instructed counsel "to base any legitimate objection on the law and not on facts." Here, the prosecutor was simply stating that he had been prosecuting under the law for many years and that he proceeds not upon his own personal beliefs, but rather upon the requirements of the law. This statement does not imply that Holland should automatically be sentenced to death. This issue is procedurally barred in part, and alternatively considered on the merits, there are none.

### f) DID THE PROSECUTOR IMPROPERLY DISCUSS VICTIM-IMPACT EVIDENCE?

¶171. The prosecutor stated that Holland's actions had victimized the family of "Krystal King everyday." Holland objected, but his objection was to an earlier comment that Holland's actions had victimized his own family because of his murdering another person. Since Holland's objection was not specific, this Court applies the procedural bar to these issues. ***Harrison***, 635 So. 2d at 903.

¶172. Alternatively, procedural bar notwithstanding, considering the issue on the merits we find no merit to Holland's contentions. Holland asserts that the trial court's allowing the prosecutor's statement left him unable to assert evidence in rebuttal on victimization. Holland argues that he could have found evidence of abuse against Krystal by her family. The first problem is that Holland did not object specifically to this issue, thus barring review. ***Id.*** Second, without a proffer of what Holland's new evidence would have been, this Court cannot consider the appeal in an informed manner. ***Wirtz v. Switzer***, 586 So. 2d 775, 784 (Miss. 1991). Therefore, we find this issue is without merit.

### g) DID THE PROSECUTOR LESSEN THE JURY'S RESPONSIBILITY FOR DETERMINING HOLLAND'S SENTENCE?

¶173. Holland claims the prosecutor erred by stating that the prosecution "expect[ed] you [the jury] to do the right thing." In addition, in response to defense counsel's assertion that the jury would always remember Holland if they voted for death, the prosecutor stated the jury would remember that "you did your duty to the community." The United States Supreme Court stated such comments have "no place in the administration of justice," but also found such errors harmless under the circumstances. *United States v. Young*, 470 U.S. 1, 18 (1985). Courts reviewing this question have agreed that if such an appeal to civic duty is error, it is harmless. *People v. Wash*, 861 P.2d 1107, 1136 (Cal. 1993), *cert. denied*, 513 U.S. 836 (1994); *Byrd v. Commonwealth*, 825 S.W.2d 272, 276 (Ky. 1992); *People v. Kirkland*, 605 N.Y.S.2d 27, 28 (N.Y. App. Div. 1993).

¶174. The prosecutor also stated that he had the job of "charging this crime," and that Holland was being tried for capital murder because "this was one of those rare cases." Holland did not object to this comment contemporaneously, and the issue is procedurally barred. *See*, *Box v. State*, 610 So. 2d 1148, 1154 (Miss. 1992).

¶175. Additionally, the following statements are procedurally barred for lack of objection: (1) the prosecutor's statement that the death penalty was "under a law passed and adopted and approved in the United States of America and the State of Mississippi," (2) the prosecutor's statement that imposing the death penalty was "the right thing" to do, (3) the prosecutor's statement that the death penalty was "the only just verdict in this case," and (4) the prosecutor's statement that "it is my strong contention that you can't [grant the defendant mercy] under the sentencing instruction S-1, and you said that you would follow the law." *Box*, 610 So. 2d at 1154.

### h) DID THE PROSECUTOR MAKE A PREJUDICIAL COMMENT ABOUT DEFENSE COUNSEL?

¶176. Holland asserts that the following statement, made by the prosecutor, was error. The prosecutor stated on rebuttal at closing argument, "I heard counsel for the defense, and I certainly don't criticize them, they have a tough job. It's very tough to defend him [Holland] even against the death penalty given the facts in this case."

¶177. Holland argues that this statement falls under a prohibited class of prosecutorial misconduct, where a prosecutor's actions deflect the attention of the jury from the real issues in the case. *See Hickson v. State*, 472 So. 2d 379, 384 (Miss. 1985).

¶178. Holland's cited cases, however, involve conduct far more egregious than any of the conduct complained about in the case at bar. *Hickson* involved a prosecutor's display of the severed hands of the decedent, which was unduly prejudicial since the prosecution never attempted to properly introduce them at trial. *Hickson*, 472 So. 2d at 384. In *Griffin v. State*, the prosecutor directly commented on defendant's failure to testify, which is clearly reversible error. *Griffin v. State*, 557 So. 2d 542, 552 (Miss. 1990).

¶179. The Fifth Circuit has reviewed a case where a prosecutor allegedly attacked defense counsel in his closing argument. *United States v. Jennings*, 724 F.2d 436, 444 (5th Cir. 1984), *cert. denied*, 467

U.S. 1227 (1984). The Fifth Circuit held that such statements are permissible, where made for a valid reason. *Jennings,* 724 F.2d at 444. Here, the prosecutor merely made his statement to assert that Holland's defense was very weak. We hold that this argument was clearly proper for the prosecutor to make, and this assignment of error is without merit.

### XXV. DID THE TRIAL COURT ERR IN OVERRULING HOLLAND'S MOTION TO HAVE CERTAIN COLOR PHOTOGRAPHS OF THE VICTIM CHANGED TO BLACK AND WHITE PHOTOGRAPHS, AND IN OVERRULING HOLLAND'S OBJECTIONS TO THE ADMISSION OF CERTAIN COLOR PHOTOGRAPHS?

¶180. Even on the merits, Holland's argument fails. Holland claims that the trial court erred in admitting the photographs of the victim into evidence and in failing to grant his motion to change the photographs to black and white photographs. The motion to exclude these photographs is barred by the doctrine of res judicata, and the motion to change the photographs to black and white is without merit.

¶181. The photographs in question, Exhibits 14, 42,43, 44, 45, 46, 47, 48, and 49, were introduced during the guilt phase of Holland's first trial. Holland did not challenge their introduction at the guilt phase of that trial on appeal to this Court. This claim is res judicata. *Jordan v. State*, 518 So. 2d 1186, 1189 (Miss. 1987), *cert. denied*, 488 U.S. 818 (1988). Holland accepted the trial court's ruling on this issue at the guilt phase of this trial by not raising any claim of error relating to them on appeal. This portion of this claim is barred by the doctrine of res judicata. This issue cannot be relitigated on this appeal.

¶182. Holland has cited no authority holding that the photographs should be changed to black and white from color. Without the citation of authority this claim is without merit. *Roberson*, supra. The color photographs were admitted during the guilt phase of first trial, and that portion of the trial was not reversed.

¶183. In addition, Holland stated during the motion hearing that he did not object to the photographs if they were changed to black and white. When the State sought to introduce the photographs at trial, Holland objected again claiming that they were not relevant to the aggravating circumstances, were not probative of anything and were inflammatory. The trial court held that the photographs were probative and would be admitted.

¶184. The two guidelines for admission of "gruesome" photographs, as given in *McNeal v. State*, 551 So. 2d 151, 159 (Miss. 1989), are "(1) whether the proof is absolute or in doubt as to the identity of the guilty party, (2) whether the photos are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury." The standard of review on this issue is abuse of discretion. *See, Griffin v. State*, 557 So. 2d 542, 549 (Miss. 1990).

¶185. Again, it is clear that the proof identifies Holland as the guilty party, based not only upon the conviction, but also upon Holland's confession and the physical evidence. *Holland,* 587 So. 2d at 851-74. Second, the evidence is relevant to establish that the murder was committed during the commission of a rape, and to prove the heinous, atrocious, and cruel aggravator. *See Shell v. State*, 554 So. 2d 887, 902 (Miss. 1989), *rev'd in part on unrelated grounds by Shell v. Mississippi*, 498 U.S. 1 (1990).

¶186. Photographs are admissible in the discretion of the trial court, and this Court will not reverse absent an abuse of discretion. ***Givens v. State***, 618 So. 2d 1313, 1317 (Miss. 1993). In ***Parker v. State***, 514 So. 2d 767, 771 (Miss. 1986), *cert. denied*, 485 U.S. 1014 (1988), this Court stated, "Some 'probative value' is the only requirement needed to buttress a trial judge's decision to allow photographs into evidence." Here, the photos were probative of the "especially heinous" aggravating factor in this case as well as to the testimony of Robert Burris, Jerry Douglas and Dr. Paul McGarry. *See **Shell v. State***, 554 So. 2d at 902. There is no violation of this Court's ruling in ***McNeal*** regarding the photographs in question, all of which had already been introduced into evidence during the guilt phase of the trial. The trial court properly allowed the introduction of these photographs. First under ***Jackson v. State***, 337 So. 2d 1242 (Miss. 1976), this Court set out the procedures for the conduct of a sentencing proceeding with bifurcation. In regards to the presentation of evidence at the sentencing phase, the Court held:

> At the sentencing hearing, the question to be decided by the jury is whether the defendant shall be sentenced to death or to life imprisonment. <u>At this hearing, the State may elect to stand on the case made at the first hearing, if before the same jury, or may reintroduce any part of the evidence adduced at the first hearing which it considers to be relevant to the particular question of whether the defendant shall suffer death or be sentenced to life imprisonment.</u>

*Id.* at 1256. (emphasis added)

¶187. As understood by the trial court and the State, this procedure set forth in ***Jackson*** has remained accepted procedure in the trial of death penalty cases even after the adoption of the statutory scheme by the legislature. ***Hill v. State***, 432 So. 2d, 427, 441 (Miss. 1980), *cert. denied*, 464 U.S. 977 (1983); ***In re Jordan***, 390 So. 2d 584, 585 (Miss. 1980); ***Irving v. State,*** 361 So. 2d 1360, 1367 n. 1 (1978), *cert. denied*, 441 U.S. 913 (1979). The State reintroduced this evidence during the sentence phase of this trial conducted after remand. There is no merit to this issue.

### XXVI. DID THE TRIAL COURT ERR IN ADVISING THE VICTIM'S FAMILY THAT VICTIMS' FAMILIES NORMALLY SIT BEHIND THE PROSECUTION, AFTER WHICH THE VICTIM'S FAMILY MOVED BEHIND THE PROSECUTION?

¶188. Holland asserts that the trial court mentioned to the victim's family that such families usually sit behind the prosecution. Holland asserts that the trial court's comments were participation on behalf of the State, constituting reversible error. ***West v. State***, 519 So. 2d 418, 422-24 (Miss. 1988).

¶189. We hold that this issue is procedurally barred because Holland did not object to this occurrence at trial. ***Foster v. State***, 639 So. 2d 1263, 1288-89 (Miss. 1994), *cert. denied,* 514 U.S. 1019 (1995); ***Chase***, *supra*; ***Cole, supra.***

¶190. Additionally, it is noted that Holland made no record of whether anyone got up and moved after the trial judge's comment. Thus, because the record is insufficient on this matter, no determination of this claim can be made. This court held in ***Burney v. State***:

> This Court has stated that "[w]e have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief . . . " ***Mason v. State***, 440 So. 2d 318, 319 (Miss. 1983). And, further, to the appellant falls the duty of insuring that the record

contains sufficient evidence to support his assignments of error on appeal." ***Robinson v. State***, 345 So. 2d 1044, 1045 (Miss. 1977). *Accord* ***Baugh v. State***, 388 So. 2d 141, 143 (Miss. 1980); ***Rhodis v. State***, 349 So. 2d 1046, 1047(Miss. 1977). Therefore, we find these three assignments without merit.

515 So. 2d 1154, 1160 (Miss. 1987).

¶191. Procedural bar notwithstanding, alternatively, this argument is specious. Again, the statement is taken out of context. The trial judge's comment occurred in the context of the discussion of a note sent to the court by one of the jurors during a recess. The juror informed the court that another juror thought she recognized someone she knew in the audience in the courtroom and was concerned that this person might be a witness. The prosecutor advised the court that none of the State's witnesses were seated in the courtroom. The court was still concerned that the juror "might feel that they're related one way or the other to the parties." The court ultimately brought the juror, Ms. Viger, into the courtroom out of the presence of the other jurors and assured her that the person she was concerned about, Ms. Thigpen, "if [she] were in the audience and if she's in here now, she's just a party in interest -- a citizen in interest. She's not related to either the victim or the accused, I should say the defendant, she's not a witness."

¶192. The trial court was clearly not informing the family of the victim or, for that matter, the defendant where to sit, but rather, was making a comment on what usually happened during a trial. Here, the court made no attempt to assist either the State or the defense, but merely addressed in a practical, common sense manner, a problem posed to the trial judge by a juror. The comment does not remotely approach the actions of the trial court in ***West v. State***, 519 So. 2d 418 (Miss. 1988). The claim is procedurally barred and alternatively without merit.

### XXVII. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY THAT IT COULD NOT CONSIDER SYMPATHY IN DETERMINING HOLLAND'S SENTENCE?

¶193. The trial court instructed the jury in C-1 that it could not be influenced by bias, sympathy, or prejudice, and that the verdict could not be based upon speculation, guesswork or conjecture. Holland states that this instruction was error. *See* ***Pinkney v. State***, 538 So. 2d 329, 351 (Miss. 1988), *vacated on other grounds by* ***Pinkney v. Mississippi***, 494 U.S. 1075 (1990). Holland's proposed instruction left out the word sympathy.

¶194. Recent Mississippi caselaw permits a C-1 type instruction if the instruction does not totally shut off consideration of sympathy. ***Willie v. State***, 585 So. 2d 660, 677 (Miss. 1991). This Court has also held that the use of the words "not to be influenced by sympathy" does not mean that the jury is instructed to disregard sympathy. ***Ladner v. State***, 584 So. 2d 743, 759 (Miss. 1991), *cert. denied*, 502 U.S. 1015 (1991).

¶195. We note that the State contends that the trial court was correct to allow the sentencing instruction under ***Saffle v. Parks***, 494 U.S. 484 (1990), *reh'g denied*, 495 U.S. 924 (1990), which was adopted by this Court in ***Jenkins v. State***, 607 So. 2d 1171 (Miss. 1992). In ***Saffle***, the trial court gave the following instruction:

You are the judges of the facts. The importance and worth of the evidence is for you to determine. <u>You must avoid any influence of sympathy, sentiment, passion, prejudice, or other arbitrary factor when imposing sentence</u>. You should discharge your duties as jurors impartially, conscientiously, and faithfully under your oaths and return such verdict as the evidence warrants when measured; by these Instructions.

*Saffle*, 494 U.S. at 486.

¶196. The United States Supreme Court found no problem with this instruction, which eliminates the element of sympathy from juror determination more clearly than Holland's instruction. The reasoning behind the acceptance of such instructions is set forth in *Saffle*:

It is no doubt constitutionally permissible, if not constitutionally required, [citation omitted] for the State to insist that "the individualized assessment of the appropriateness of the death penalty [be] a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence." *California v. Brown*, 479 U.S. at 545. 93 L. Ed. 2d 934, 107 S.Ct. 837 (O'Connor, J., concurring). Whether a juror feels sympathy for a capital defendant is more likely to depend on that juror's own emotions than on the actual evidence regarding the crime and the defendant. It would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities with our longstanding recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary. [citations omitted]

*Saffle*, 494 U.S. at 492.

The State must not cut off full and fair consideration of mitigating evidence; but it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice [citations omitted]

*Id.* at 493.

The objectives of fairness and accuracy are more likely to be threatened that promoted by the rule allowing the sentence to turn not on whether the defendant, in the eyes of the community, is morally deserving of the death sentence, but on whether the defendant can strike an emotional chord in a juror.

*Id*. at 495.

¶197. The *Saffle* rationale was adopted by this Court in *Jenkins v. State*, 607 So.2d at 1881 and more recently in *Foster v. State*, 639 So. 2d at 1300.

¶198. In addition, the United States Supreme Court has also approved a similar anti-sympathy instruction, directing a juror not to be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling," since relying on mere sympathy "divorced from the evidence" would be improper. *California v. Brown,* 479 U.S. 538, 542-43 (1987).

¶199. This instruction's language stated that the jury should not be influenced or swayed, and it did not use the word "mere sympathy" in describing sympathy. Since this Court stated that usage of the

term "not to be influenced" did not shut off all ability to sympathize, this instruction is not erroneous. *See* **Ladner**, 584 So. 2d at 759. Under both state and federal caselaw, the instruction was proper. There is no merit to this issue.

## XXVIII. DID THE JURORS FIND ANY AGGRAVATING CIRCUMSTANCES BEYOND A REASONABLE DOUBT?

¶200. Holland objects to the form of the verdict in this question, which did not state the aggravators were found "beyond a reasonable doubt." However, he did not object to the form of this verdict at trial, Sentencing Instruction S-1, thus barring appeal on that issue. **Cole v. State**, 525 So. 2d 365, 369 (Miss. 1987), *cert. denied*, 488 U.S. 934 (1988), *reh'g denied*, 488 U.S. 1023 (1989). Holland raised the issue for the first time in the motion for new trial; thus, the objection comes too late. The verdict form was included in Instruction S-1, to which Holland, at the time, made no objection. Any objection should have been made when the instructions were being considered. **Chase,** *supra;* **Foster,** *supra;* **Cole,** *supra.* **Acevado v. State** does not help Holland, since it discusses the specificity of an objection being no bar, not the lack of any objection whatsoever. **Acevado v. State**, 467 So. 2d 220, 223-24 (Miss. 1985).

¶201. Procedural bar notwithstanding, alternatively, considering the issue on the merits, there are none. The failure of the verdict form to contain the words "beyond a reasonable doubt" is not fatal. The jury was told that they had to find aggravating circumstances beyond a reasonable doubt. The verdict form contained a bracketed statement that the jury was to list only those aggravating circumstances that they found "beyond a reasonable doubt." Here, under no scenario can Holland claim that this jury did not find the aggravating circumstances beyond a reasonable doubt. The verdict of the jury is sufficient if it simply states that the jury finds the defendant guilty of capital murder. This claim is barred for failure to object and is, alternatively, wholly without merit.

## XXIX. DID THE TRIAL COURT ERR IN REFUSING HOLLAND'S PROPOSED INSTRUCTIONS?

¶202. Holland asserts that the denial of his instructions D-5, D-6, D-21, D-25, D-30, and his original D-22, was error. Each instruction is handled separately.

### a) D-5 - RIGHT NOT TO TESTIFY INSTRUCTION

¶203. D-5 basically states that a defendant has a right not to testify. The trial court agreed to submit an edited version, containing only the first sentence. The trial court thought the remainder of the instruction was speculative because the reasons Holland would not testify, such as being inarticulate, were not supported by the record. Holland drew heavily on the instruction discussed in **Hansen**, 592 So. 2d at 148 n.17. Holland's attorneys stated the defense wanted D-5 as is, or completely refused. The trial court did not instruct the jury on the right not to testify.

¶204. Two questions arise. First, are the last sentences in D-5 objectionable, and, second, can a defendant waive his right-not-to-testify instruction? Mississippi case law will not permit an instruction without credible evidence supporting its premise. **Hicks v. State**, 580 So. 2d 1302, 1306 (Miss. 1991). However, this denial can arise only if the trial court can find that a hypothetical reasonable jury could not find in favor of the defendant's issue, taking all evidence and inferences in

favor of the defendant. ***Anderson v. State***, 571 So. 2d 961, 964 (Miss. 1990). There was no evidence presented of Holland's being inarticulate or being ill-at-ease around a jury. There was also no evidence indicating that any brain impairment or dysfunction Holland might have would adversely affect his ability to testify. Accordingly, that part of the instruction could be properly stricken.

¶205. The next question is whether the instruction on the right not to testify is waivable. Mississippi has stated that such explanatory right to testify instructions, exactly like this one, are properly refused unless the trial court abused its discretion in denying it. ***Hansen***, 592 So. 2d at 148-49. This Court stated that a defendant does is not "of right" entitled to that specific instruction. ***Id.*** at 149.

¶206. The United States Supreme Court has not answered this question, but two Justices have stated in two separate opinions that this instruction is the defendant's to waive. ***Lakeside v. Oregon***, 435 U.S. 333, 347-48 (1978) (Stevens, J., dissenting); *see also* ***Carter v. Kentucky***, 450 U.S. 288, 307 (1981) (majority opinion holding reversible error results when trial court refuses right not to testify instruction at defendant's request).

¶207. Other states have held such an instruction is waivable. ***Hardaway v. State***, 562 A.2d 1234, 1237 (Md. 1989); *see* ***Van Evey v. State***, 499 N.E.2d 245, 246-47 (Ind. 1986). As a result, there is sufficient legal support for determining the trial court could allow the defense to waive that instruction.

### b) D-6 - AGREEMENT IN REASONABLE TIME INSTRUCTION.

¶208. Holland next argues that D-6 should have been given, which basically states that Holland would get life imprisonment if the jury could not agree within a reasonable time.

¶209. This Court has already approved a jury instruction discussing the procedure to find for or against the death penalty, which did not include the reasonable time language found in Miss. Code Ann. §99-19-103 (1994 rev.); ***King v. State***, 421 So. 2d 1009, 1018 (Miss. 1982), *cert. denied*, 461 U.S. 919 (1983), *vacated in part on other grounds*, 656 So. 2d 1168 (Miss. 1995). The ***King*** Court did allude to the reasonable time procedure, which the trial court had to follow, but did not require its inclusion. ***King***, 421 So. 2d at 1009. Therefore, it is arguable that the trial court could indeed bar this instruction.

### c) D-21 - GRANT OF LIFE DESPITE FINDING OF AGGRAVATING FACTORS.

¶210. Holland asserts that the trial court improperly denied D-21. The trial court denied D-21 on grounds of repetitiveness with S-1.

¶211. S-1, part B, states that only the introduced aggravating factors may be considered by the jury, to be determined only by a beyond-a-reasonable-doubt standard. This part mirrors the first paragraph of D-21. The remainder of S-1, part B, instructs the jury that should they find the mitigating circumstances outweigh the aggravating circumstances, they must find for life imprisonment. This point slightly varies from D-21, which states that a jury can find for life imprisonment if they find the aggravators are insufficient to justify death.

¶212. However, Holland travels under an argument that anti-sympathy instructions are improper. This Court has approved the grant of this instruction, where approved by the trial court. ***Tokman v.***

*State*, 435 So. 2d 664, 671 (Miss. 1983), *cert. denied*, 467 U.S. 1256 (1984), *abrogated on other grounds by* **Willie v. State**, 585 So. 2d 660, 680-81 (Miss. 1991). This Court has also stated a trial court may deny the instruction. **Hansen**, 592 So. 2d at 150. Holland argues the result is an arbitrary set of courts which allow the instruction and a set which do not, triggering a due process violation. *See* **Hicks v. Oklahoma**, 447 U.S. 343, 346 (1980) (generally stating defendants may not be arbitrarily deprived of their liberty interests under the Fourteenth Amendment).

¶213. The Seventh Circuit has held that rules which do not grant an entitlement do not create a due process property interest. **Miller v. Henman**, 804 F.2d 421, 427 (7th Cir. 1986)*, cert. denied,* 484 U.S. 844 (1987). Since under this Court's caselaw, Holland is not *entitled* to instructions on sympathy, he has no due process claim.

### d) D-22 - MITIGATING FACTORS INSTRUCTION.

¶214. Holland also asserts that denial of the original D-22 was error. The amended D-22 omitted the part of the original D-22 which stated, "You must find a mitigating circumstance if it is proven by a preponderance of the evidence."

¶215. Holland cites no support for his assertion. Accordingly, it is barred under **Kelly v. State**, 553 So. 2d 517, 521 (Miss. 1989). Furthermore, alternatively, considering the merits of this issue, this Court's holding in **Conner v. State**, 632 So. 2d 1239, 1271-72 (Miss. 1993), *cert. denied*, 513 U.S. 927 (1994), expressly refused to find error in an instruction which did not give the exact burden of proof for mitigating factors. Thus, there is no merit to this issue.

### e) D-25-INSTRUCTION PERMITTING LIFE IMPRISONMENT EVEN WITHOUT MITIGATING FACTORS.

¶216. Holland argues that denial of this instruction was error. Holland asserts that this instruction, as with all mercy instructions, is properly admissible under Mississippi law. *See, e.g,* **Tokman v. State**, 435 So. 2d at 671. Again, Holland states that even if this Court rejects his view on mercy instructions, due process requires a consistent application of law on this issue, which is not present now.

¶217. This mercy argument is the same as with Instruction D-21. We have previously discussed fully mercy instructions, and this instruction will be resolved on the same premise as that of D-21. There is no merit to this issue.

### f) D-30 - REASONABLE DOUBT INSTRUCTION.

¶218. Holland asserts that denial of his reasonable doubt instruction was error. Holland asserts that this instruction is a "standard instruction." This Court has expressly disapproved Holland's language in this instruction as argumentative and abstract. **Giles v. State,** 501 So. 2d 406, 409 (Miss. 1987); **Hunter v. State**, 489 So. 2d 1086, 1089 (Miss. 1986); *see also* **Edwards v. State**, 594 So. 2d 587, 592-93 (Miss. 1992) (holding defendant not entitled to instruction asserting defendant is not guilty if jury cannot find elements beyond a reasonable doubt, where jury is otherwise properly instructed on reasonable doubt).

¶219. Holland asserts in his reply brief that the trial court nevertheless had a duty to correct his

instruction. ***Rainer v. State***, 473 So. 2d 172, 174 (Miss. 1985). However, in light of the fact that this Court has repeatedly approved of the striking of this instruction altogether, there is no problem in not reforming this instruction. There is no merit to this issue.

> ### XXX. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY ON THE AGGRAVATING CIRCUMSTANCE THAT THE OFFENSE WAS COMMITTED FOR THE PURPOSE OF AVOIDING OR PREVENTING A LAWFUL ARREST; WAS THERE SUFFICIENT EVIDENCE TO CONVINCE A REASONABLE JUROR OF THIS AGGRAVATING CIRCUMSTANCE BEYOND A REASONABLE DOUBT UNDER *JACKSON v. VIRGINIA*, 443 U.S. 307, 319 (1979)[(15)]?

¶220. Holland claims the trial court erred in granting the avoiding arrest instruction. The suggestion of error in instruction, and the insufficiency of the evidence question, arise from the same issue. They are discussed together. Holland asserts that this aggravator was improperly given, since a "substantial reason" for the murder was not to conceal the identity of the killer or avoid apprehension by authorities. *See* ***Leatherwood v. State***, 435 So. 2d 645, 651 (Miss. 1983), *cert. denied*, 465 U.S. 1084 (1984). Here, Holland asserts that the steps taken to conceal the evidence after Krystal's death are irrelevant since the wish to avoid arrest must be a substantial reason for the killing.

¶221. Holland overlooks the fact that the jury may infer that Holland killed Krystal in order to avoid arrest, based upon the physical evidence. Dr. McGarry testified that the placement of Krystal's panties down her throat occurred shortly after her rectal and vaginal injuries and about the same time as the strangulation. Krystal was alive after the rape, according to Dr. McGarry's testimony. Why then was she killed? Holland silenced any cries for help by stuffing her panties down her throat. The obvious inference that could be drawn by the jury was that Holland killed Krystal to silence her permanently so that she would not report him as the rapist. The post-mortem actions reinforce this conclusion. Holland mutilated Krystal's genital area so that if her body were found, authorities would think some "sex fiend" had committed the crime. Again, the inference is that such action was calculated to avoid detection and to throw off the officers in their quest to determine who murdered and raped Krystal.

¶222. In a similar case, this Court held that the presence of sexual injuries, where the victim died of drowning, justified the jury in finding "beyond a reasonable doubt that the child had been killed maliciously by [the defendant] . . . for the purpose of silencing her outcries or preventing the report by her of acts of molestation." ***Gray v. State***, 375 So. 2d 994, 1004 (Miss. 1979), *cert. denied*, 446 U.S. 988 (1980), *reh'g denied*, 448 U.S. 912 (1980). Given ***Gray***, it is clear that jurors are entitled to make the logical connection between the injuries suffered and finding an inference that the defendant murdered his victim to avoid arrest. In addition, all of Holland's actions to avoid arrest after Krystal's death would be relevant to this aggravator since it was "part of the entire transaction constituting the crime," also known as res gestae. ***Wade v. State***, 583 So. 2d 965, 967 (Miss. 1991).

¶223. The standard of review for sufficiency of the evidence is to affirm the conviction unless "no reasonable hypothetical juror" could reach a guilty verdict under the evidence presented. ***Pierre v. State***, 607 So. 2d 43, 54 (Miss. 1992). Our caselaw allows physical injuries suffered by the victim and res gestae to give rise to an inference that the murder was committed to avoid arrest. In ***Chase v. State***, 645 So. 2d. 829 (Miss 1994), *cert. denied* 115 S. Ct.2279 (1995), the Court again asserted the principal that the evidence within the record must be substantial and sufficient to support the giving

of the instruction. The giving of the avoiding arrest instruction is not predicated upon avoidance of arrest being the only reason or primary reason for the killing, but rather just a substantial reason for the killing. *Chase,* 645 So. 2d at 858. Here, there is sufficient evidence to support the use of this aggravator.

¶224. Holland asserts that this aggravator deserves some sort of limiting instruction, although he does not specify how it should read. This Court has repeatedly held that a limiting instruction is not required. *Chase*, 645 So. 2d at 858; *Hansen*, 592 So. 2d at 152-53. There is no merit to this issue.

### XXXI. WAS THE TRIAL COURT'S SUPPOSEDLY LIMITING INSTRUCTION WITH RESPECT TO THE ESPECIALLY HEINOUS, ATROCIOUS, OR CRUEL AGGRAVATING CIRCUMSTANCE UNCONSTITUTIONALLY VAGUE AND OVERBROAD?

¶225. Holland objected to the State's Sentencing Instruction No.2, describing the heinous, atrocious and cruel aggravator. A plurality of the United States Supreme Court has noted that the Court would reject Mississippi's heinous, atrocious, and cruel jury instruction without a valid limiting statement. *Clemons v. Mississippi*, 494 U.S. 738, 757 (1990) (Blackmun, J., concurring in part, dissenting in part, with three Justices joining), *citing Maynard v. Cartwright*, 486 U.S. 356, 363-64 (1988).

¶226. This Court has since reviewed heinous, atrocious and cruel aggravators to ensure their validity under *Maynard* and *Clemons*. We have affirmed the use of this aggravator, as long as the State limits and defines this aggravator by stating "the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies -- the conscienceless or pitiless crime which is unnecessarily tortuous to the victim." *Lockett v. State*, 614 So. 2d 888, 896 (Miss. 1992), *cert. denied*, 510 U.S. 1040 (1994), *reh'g denied*, 510 U.S. 1173 (1994). *Lockett* also required the definition of heinous, atrocious, and cruel as being "a conscienceless or pitless [sic] crime which is unecessarily [sic] torturous to the victim." *Lockett*, 614 So. 2d at 896.

¶227. In this case, we find that Instruction S-2 tracked this language in its own definition of heinous, atrocious, and cruel. Therefore, like *Lockett*, this Court affirms this issue as being without merit. *Id*. at 896.

## WAS THERE CUMULATIVE ERROR IN THIS ISSUE?

¶228. Holland asserts that our caselaw will allow a cumulation of otherwise harmless error to result in reversal. *See Jenkins v. State*, 607 So. 2d 1171, 1183-84 (Miss. 1992); *Griffin v. State*, 557 So. 2d 542, 552-53 (Miss. 1990); *see also United States v. Garza*, 608 F.2d 659, 665 (5th Cir. 1979).

¶229. This Court has addressed each of Holland's claims of prosecutorial misconduct and has applied the procedural bar to many. Alternatively, considering the issues on the merits we have determined that each alleged error is wholly without merit. Thus, there can be no cumulative error that would cause reversal. *Foster v. State*, 639 So. 2d 1263 (Miss. 1994), *cert. denied*, 514 U.S. 1019 (1995). Here there are simply no errors, hence "[t]wenty times zero equals zero." *Mullen v. Blackburn*, 808 F. 2d 1143, 1147 (5th Cir. 1987).

# CONCLUSION

¶230. Having completely examined and discussed all issues, finding some procedurally barred or waived and, alternatively, without merit and the remainder wholly without merit, we affirm Holland's sentence of death.

## *PROPORTIONALITY REVIEW*

¶231. This Court must determine whether the death sentence in this case "is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Miss. Code Ann. §99-19-105(3)(c) (1994 rev.). When the sentence is disproportionate, this Court may "set the sentence aside and remand the case for modification of the sentence to life imprisonment." Miss. Code Ann. §99-19-105(5)(b) (1994 rev.).

¶232. Two cases are useful for determining proportionality review. The first discusses the crime. ***Brown v. State*** 682 So. 2d 340 (Miss. 1996), cert. denied, 117 S.Ct. 1271 (1997), involved a defendant who shot a store clerk four (4) times - once in the head, once through the heart, and twice in the back - during the commission of armed robbery. Id. at 343. The jury convicted Brown of capital murder and sentenced him to death. Id. at 344. This Court held that under the circumstances, a sentence of death was not disproportionate. Id. at 357.

¶233. The facts in this case are more egregious, including the physical violence surrounding Krystal's death, as demonstrated by the wounds sustained by Krystal (in Brown, four gunshot wounds to the head, heart and back; in this case, asphyxiation in two ways, by stuffing panties down the victim's throat and by tying her shirt around her neck, with stab wounds to her chest, and a skull crushing blow to her head, and the genital and rectal injuries from the sexual assault), and the duration of the victim's trauma (in Brown, gunshot wounds inflicted moments after entering store; in this case, genital and rectal injuries from the sexual assault took between forty-five minutes and one hour to complete).

¶234. As to the defendant, ***Foster v. State***, 639 So. 2d at 1303, is an appropriate case to review. In *Foster*, the defendant had a low IQ score and had the ability to understand right from wrong, and no documented evidence indicating mental impairment. *Foster*, 639 So. 2d at 1303. In contrast, Dr. Zimmermann's testimony indicates that Holland had a measurable brain dysfunction, which was compensated for in the operation of his brain. However, the evidence also indicated that Holland had normal EEG and brain scan readings as well as an average IQ score. In addition, Holland did not contend that he did not know right from wrong. Under these circumstances, the Court cannot say that Holland is less deserving of the death sentence than Foster.

¶235. Upon review of the totality of the case, this Court cannot say that the death sentence is disproportionate as applied to Holland.

¶236. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105(7)(SUPP. 1995) AND M.R.A.P. 41(a).**

**PITTMAN, ROBERTS AND MILLS, JJ., CONCUR. DAN LEE, C.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J. McRAE, J., NOT PARTICIPATING.**

### DAN LEE, CHIEF JUSTICE, SPECIALLY CONCURRING:

¶237. I concur with the result of the majority opinion and write separately because I believe the principle of "finality of criminal judgments" is pertinent to this case and needs further discussion. As I have previously written, it is my strong belief that the principle of finality of judgment in criminal matters compels this Court to affirm a sentence when "all factual issues have been established and re-established by way of multiple submissions to juries." *Wilcher v. State*, 635 So. 2d 789 (Miss. 1993); *Irving v. State*, 618 So. 2d 58, 63 (Miss. 1992). "The firmly established judicial concern for finality evidenced in such doctrines as *res judicata* is not to be lightly discounted." *Irving*, 618 So. 2d at 63. My concern is shared and has been addressed by the United States Court of Appeals for the Seventh Circuit when it stated:

> Every inroad on the concept of finality undermines confidences in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice.

*United States v. Smith*, 440 F.2d 521, 528-29 (7th Cir. 1971).

¶238. There must be finality in criminal judgments. This case has been tried, reviewed, and decided by two trial juries. In Holland's original direct appeal, the first trial was examined closely by this Court and the death sentence was vacated. Now the second jury's sentence is before the Court on direct appeal. The question of his guilt of the crimes of rape and murder is *res judicata* from the first trial's guilt phase and cannot be relitigated. Finding no assignment of error worthy of merit, I cannot agree to sending Holland's case back for a third jury to again consider the death penalty. Based on the facts and circumstances presented in the case *sub judice*, the sentence twice previously returned by the trial juries should be affirmed.

¶239. Accordingly, for the above reasons, I concur with the result reached by the majority.

**ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**

### PRATHER, PRESIDING JUSTICE, DISSENTING:

¶240. A criminal defendant has a right, during the sentencing phase of a capital murder trial, to rebut evidence presented by the State and to introduce mitigating evidence related to the defendant's character, his record, and/or the circumstances of the crime. Therefore, I respectfully dissent from the views expressed in sections II through VII of the majority opinion.

¶241. The difficult question presented in this case arises from this State's statutory scheme for bifurcating capital murder trials into a guilt phase and a sentencing phase. The question is, to what extent may the scope of evidence in the two phases of the trial overlap? The answer is particularly complicated in a case such as Holland's, where the sentencing phase is tried by a jury other than the one which determined guilt.

¶242. This Court has never addressed this issue. However, this Court has held that (although residual doubt is not a mitigating factor and the jury cannot be so instructed) doubt relating to guilt itself may be a factor in capital murder sentencing and defense counsel may argue such doubt. *Minnick v. State*, 551 So. 2d 77, 94-95 (Miss. 1988), *rev'd on other grounds*, 498 U.S. 146 (1990), *overruled on other grounds*, *Willie v. State*, 585 So. 2d 660, 681 (Miss. 1991). *See also Cole v. State*, 525 So. 2d 365, 371 (Miss. 1987). Implicit in this holding, is the fact that counsel's argument must be based on the evidence presented, and that such evidence is admissible.

¶243. The notion of "residual" or "whimsical" doubt is subject to great debate. However, such debate is only tangential to the constitutional problems presented in this case. As the majority correctly indicates, the issue of guilt cannot be relitigated during the sentencing phase of the trial. However, the United States Supreme Court has held that a sentencer may not be "precluded from considering, as a mitigating factor, any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (citing *Lockett v. Ohio*, 438 586, 604 (1978) (plurality)). The defendant is entitled to "individualized consideration" of his character, his record and his crime. *See Minnick v. State*, 551 So. 2d at 96.

¶244. In addition, as the majority correctly points out, the State is required by statute to prove the applicable statutory aggravators and the following "*Enmund*" factors beyond a reasonable doubt: "(1) The defendant actually killed; (2) The defendant attempted to kill; (3) The defendant intended that a killing take place; (4) The defendant contemplated that lethal force would be employed." *Pinkton v. State*, 481 So. 2d 306, 309 (Miss. 1985); *Enmund v. Florida*, 458 U.S. 782, 797 (1982); Miss. Code Ann. §99-19-101(7) (1994 rev.). It would be inconsistent for this Court to recognize the State's duty to present such evidence, but not to recognize the defendant's right to rebut it.

¶245. Furthermore, the United States Supreme Court has held that a capital murder defendant must have an opportunity to deny or explain any information used against him at sentencing. "The Due Process Clause does not allow the execution of a person 'on the basis of information which he had no opportunity to deny or explain.'" *Simmons v. South Carolina*, 512 U.S. 154, 161 (1994) (plurality) (quoting *Gardner v. Florida*, 430 U.S. 349, 362 (1977)). *See also Skipper v. South Carolina,* 476 U.S. 1, 5 n.1 (1986) (permitting defendant to submit rebuttal evidence of behavior in prison to counter State's charges of defendant as bad prisoner at sentencing).

¶246. In addition, other states have held that the defendant cannot be precluded from introducing rebuttal evidence of innocence at sentencing. *Blankenship v. State*, 308 S.E. 2d 369, 371 (Ga. 1983) , *cert. denied* 488 U.S. 871 (1988); *State v. Stewart*, 341 S.E. 2d 789 (S.C. 1986) (Given that the State's evidence of guilt is admissible at the resentencing hearing, basic fairness requires that appellant's evidence of innocence be admitted as well). This is particularly true where a new jury is empaneled for sentencing purposes. *Romine v. State*, 350 S.E. 2d 446, 453 (Ga. 1986), *cert. denied*

481 U.S. 1024 (1987).

¶247. The capital murder defendant should have the opportunity to rebut the State's evidence and to prove mitigating circumstances. This is an entirely distinct concept from the majority's proposition that the doctrines of *res adjudicata* and collateral estoppel control the outcome in this case. Clearly, guilt cannot be relitigated. However, the issue here is not whether the conviction can be retried. Rather, the issue is, whether certain evidence is relevant to sentencing in capital murder cases. Although some of the evidence admitted may relate both to guilt and sentencing, the sentencing hearing would have no effect on the previous conviction of guilt. Therefore, the majority's application of the doctrines of *res adjudicata* and/or collateral estoppel does not really answer the legal question raised in this case.

¶248. Specifically, Holland contends that he should have been allowed to introduce Dr. Canfield's testimony that no acid phosphatase was found in the vaginal swabs from the victim, which indicated that no semen was present. This evidence was admissible, because it relates to the circumstances of the crime. ***Eddings v. Oklahoma***, 455 U.S. 104, 110 (1982). Furthermore, to the extent such evidence could rebut the "heinous, atrocious, and cruel" aggravator, it was relevant to sentencing and should have been admitted into evidence. ***See Simmons v. South Carolina***, 512 U.S. 154, 161 (1994) (plurality) (quoting ***Gardner v. Florida***, 430 U.S. 349, 362 (1977)). ***See also Skipper v. South Carolina,*** 476 U.S. 1, 5 n.1 (1986). For this reason, I would reverse and remand.

¶249. Holland also contends that he should have been allowed to obtain an expert in forensic pathology to dispute the findings of the State's expert (Dr. McGarry) regarding the circumstances surrounding the victim's death. On remand, I would instruct the trial judge to evaluate the necessity of such an expert. ***See Hansen v. State***, 592 So. 2d 114, 125 (Miss. 1991) (general standard of review for a trial court's refusal to provide an expert witness is substantial need for that expert).

¶250. Many facts relevant to guilt may also be relevant to sentencing. Due process requires that the defendant being sentenced for capital murder must be allowed to rebut the State's evidence and to prove mitigating circumstances. Furthermore, the introduction of such evidence would in no way undermine the validity of the underlying conviction. For these reasons, I would reverse for resentencing. Therefore, I must respectfully dissent.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**

## APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

***Wiley v. State,*** 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581(Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

**\*Shell v. State**, 554 So. 2d 887 (Miss. 1989), **Shell v. Mississippi,** 498 U.S. 1 (1990) reversing, in part, and remanding, **Shell v. State**, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d 165 (Miss. 1989).

## <u>DEATH CASES AFFIRMED BY THIS COURT</u>

### <u>(continued)</u>

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

**\*Pinkney v. State**, 538 So. 2d 329 (Miss. 1989), **Pinkney v. Mississippi**, 494 U.S. 1075 (1990)

vacating and remanding *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987)*, Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE

## <u>AND SENTENCE PHASE</u>

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

**DEATH CASES REVERSED AS TO GUILT PHASE**

**<u>AND SENTENCE PHASE</u>**

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).


## DEATH CASES REVERSED

## AS TO PUNISHMENT AND REMANDED

## <u>FOR RESENTENCING TO LIFE IMPRISONMENT</u>

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).


## DEATH CASES REVERSED AS TO

## PUNISHMENT AND REMANDED FOR A NEW TRIAL

## <u>ON SENTENCING PHASE ONLY</u>

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

***Shell v. State***, 554 So. 2d 887 (Miss. 1989), ***Shell v. Mississippi***, 498 U.S. 1 (1990) reversing, in part, and remanding, ***Shell v. State*** 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi,* 494 U.S. 1075 (1990) vacating and remanding, *Pinkney v. State,* 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Jones v. State*, 517 So. 2d 1295 (Miss. 1987), *Jones v. Mississippi,* 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (Miss. 1996)

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

## DEATH CASES REVERSED AS TO

## PUNISHMENT AND REMANDED FOR A NEW TRIAL

## ON SENTENCING PHASE ONLY

### (continued)

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339

(Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State,* 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5ᵗʰ Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).

* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

1. These findings are as follows: "(1) The defendant actually killed; (2) The defendant attempted to kill; (3) The defendant intended that a killing take place; (4) The defendant contemplated that lethal force would be employed." *Pinkton v. State*, 481 So. 2d 306, 309 (Miss. 1985). These findings arise from statements concerning accomplice liability for felony murder in *Enmund v. Florida*, 458 U.S. 782, 797 (1982) and are found in Miss. Code Ann. §99-19-101(7) (1994 rev.).

2. Holland's counsel states that *West v. State* stands for the proposition that new trials erase all prior proceedings, and "[i]ts verdict is as though it had never been." *West*, 519 So. 2d at 425; *see also Hall v. State*, 539 So. 2d 1338, 1348 (Miss. 1989) (holding "[w]hen we reverse and remand for a new trial, both sides begin anew, no balls, no strikes.") This Court has not applied this logic to re-sentencing, and if this Court were to do so, a capital defendant would receive two trials, one for guilt, and another equally- involved trial for sentencing.

Other courts take a different view. *See, e.g., Green v. Zant*, 738 F.2d 1529, 1542 (11th Cir. 1984), *cert denied*, 469 U.S. 1098 (1984), *reh'g denied*, 469 U.S. 1143 (1985) (stating that [a] defendant does not arrive at the penalty phase of a capital proceeding with a clean slate, and there is no point in pretending otherwise.")

3. Holland's eighth subsidiary argument asserts that this Court has contradicted itself on the scope of evidence admissible at the sentencing phase. On one hand, Holland notes that *Hill v. State*, 432 So. 2d 427, 441 (Miss. 1983), *cert. denied*, 464 U.S. 977 (1983) allows the presentation of all guilt phase evidence at sentencing. On the other hand, Holland also notes that *Balfour v. State*, 598 So. 2d 731, 747-48 (Miss. 1992) limited the State's proof to evidence only impacting on the aggravating circumstances.

There is no inherent contradiction. *Balfour* controls, applying Miss. Code Ann. §99-19-101(1), through limiting the presentation of evidence to aggravating circumstances. However, this Court has also noted that the State must present "credible evidence" to support *Enmund* factors at sentencing, namely, that the defendant killed. *Carr v. State*, 655 So. 2d 824, 854 (Miss. 1995), *cert. denied*, 116 S. Ct. 782 (1996).

Therefore, the State must introduce evidence of guilt at sentencing, or face a certain directed verdict on factors. Although the question of whether a defendant is entitled to present rebuttal evidence on the *Enmund* factors is still open, the State not only can, but must present evidence at sentencing for

both its aggravators and for guilt, so far as the *Enmund* factors require its proof.

4. The Supreme Court did state that where a "defendant was an accomplice in a murder committed by another person and his participation . . . was relatively minor," the defendant could introduce that evidence as a mitigating factor. *Gregg*, 428 U.S. at 195 n.44.

5. The *Schiro* Court refused to consider the applicability of collateral estoppel, in that the Court found Schiro unable to prove the elements of collateral estoppel in that case. *Schiro*, 510 U.S. at 231.

6. The *Schiro* Court noted that under its decision, a defendant would be forced to relitigate, in habitual offender prosecutions, convictions for which he had previously been tried. *Schiro*, 510 U.S. at 230. Since the Court went no further, it is still unclear what the scope of relitigation would cover in regards to the preclusive effect of a conviction on aggravating factors at sentencing.

7. Residual doubt may have a place in a sentence phase conducted before the same jury that convicted a capital defendant. However, there is no residual doubt of guilt to be argued in cases such as that at bar.

8. Holland claimed that he wanted to testify that he was innocent and that he did not commit a rape. (Tr. 1280-81). The trial court would not permit him to testify to matters of guilt or innocence, although he was otherwise free to take the stand. Holland argues that exclusion of exculpatory evidence chilled his right to testify in this case. Holland cites authority concerning his right to testify at trial. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). This Court has recognized that a defendant's prior conviction, potentially usable for impeachment, may impermissibly chill a defendant's right to testify if he has something relevant to say, such as establishing an alibi. *Saucier v. State*, 562 So. 2d 1238, 1245 (Miss. 1990); *see also* *Hansen*, 592 So. 2d at 130-31; *Hawkins v. State*, 538 So. 2d 1204, 1206 (Miss. 1989). Another state's case concerning chilling testimony dealt with using perjury as an aggravating factor without a separate trial on perjury. *State v. James*, 784 P.2d 1021, 1024-25 (N.M. Ct. App. 1989). This case upheld the trial court's ability to use defined and noted falsehoods in a defendant's testimony as a factor in considering a sentence. *James*, 784 P.2d at 1024-25.

9. In doing so, this Court merely applied the general standard for proof at criminal trials to these findings at sentencing. *White*, 532 So. 2d at 1219, *citing* *McCray v. State*, 486 So. 2d 1247, 1251 (Miss. 1986); *Barnette v. State*, 481 So. 2d 788, 791 (Miss. 1985). Federal constitutional level guarantees of due process support this requirement. *Id., citing, e.g., Jackson v. Virginia*, 443 U.S. 307 (1979), *reh'g denied*, 444 U.S. 890 (1979).

10. Holland does not explain at all as to why this information would be relevant to this factor. Assertions of error without support from "reasons and authorities" are barred from consideration. *Pate v. State*, 419 So. 2d 1324, 1325-26 (Miss. 1982). *But see Brown v. State*, 534 So. 2d 1019, 1023 (Miss. 1988) (overlooking this procedural bar "in the interest of justice."), *cert. denied*, 490 U.S. 1007 (1989).

11. Indeed, this Court held in the first case that Holland's allegations of knife play with Krystal were insufficient to raise a question of manslaughter. *Holland v. State*, 587 So. 2d 848, 870-71 (Miss. 1991). This Court noted that Holland gave several inconsistent statements about the murder,

supposedly occurring because of the knife wound, according to Holland. *Id*. at 870-71. However, this Court also noted Dr. McGarry's testimony indicated that the violent thrust of this knife could only arise through an intentional blow. *Id*. at 870. As a result of the circumstances, this Court found "no evidence of absence of malice." *Id.* at 871.

Since no evidence of a lack of malice was found, this Court can similarly conclude that there is no evidence that Krystal assisted in her own death. This argument is amply supported by the amount and timeliness of the additional injuries Krystal suffered, which led to her death.

12. Indeed, this Court has made findings before that a victim could not consent to conduct "evidenced in [the] record" (rape with a foreign object and setting victim on fire), under any set of circumstances. *Giles v. State*, 650 So. 2d 846, 855 (Miss. 1995) (Prather, P.J., concurring) (joined by four justices).

13. Holland claims several cases state that the defendant need only exhaust his peremptory challenges to have reversible error, regardless of the timing. *See Johnson v. State*, 512 So. 2d 1246, 1255 (Miss. 1987), *cert. denied*, 484 U.S. 968 (1987).

Holland appears to be reading the cases too broadly. His first case, *Hansen v. State*, 592 So. 2d 114, 129 (Miss. 1991), *cert. denied*, 504 U.S. 921 (1992), *reh'g denied*, 505 U.S. 1231 (1992) is distinguishable because Hansen had peremptories left over, and did not address this point. In *Johnson*, there was a lack of evidence on the timing of peremptory challenges that Hansen exercised. *Johnson*, 512 So. 2d at 1255. As a result, these cases do not support Holland's claim.

14. Holland cites *Harrison v. State*, 635 So. 2d 894, 902 n.2 (Miss. 1994), for the proposition that this Court has found Dr. McGarry's statements to be speculative. This argument is misleading as this Court only noted opposing evidence in that footnote without commenting on either side's credibility or competence to testify. *Harrison*, 635 So. 2d at 902 n.2.

15. *Jackson v. Virginia*, 443 U.S. 307 (1979), *reh'g denied*, 444 U.S. 890 (1979) discusses the standard for sufficiency of the evidence.